John Terry GREEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–81–00052–CR.

Court of Appeals of Texas, El Paso.

June 29, 1982.

Rehearing Denied July 28, 1982.

Hardie & Hallmark, William B. Hardie, Jr., Patrick Brower, El Paso, for appellant.

Steve Simmons, Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

In his trial for murder, Appellant was found guilty of the lesser included offense of voluntary manslaughter, and he was sentenced to serve an indeterminate period of confinement of not less than two nor more than twenty years at the Texas Department of Corrections. We affirm.

Appellant's first point of error is that the trial court erred in admitting his confession as evidence upon a showing that Appellant had been denied assistance of counsel.

A *Jackson v. Denno* hearing was conducted for the purpose of allowing the trial court to make a determination as to the voluntariness of Appellant's written statement. Following the hearing, the trial court found that the Appellant fully understood his rights and had voluntarily made the statement. We have concluded that the evidence sustains the trial court's findings. The trial court is the sole judge of the weight of the testimony and the credibility of the witnesses at a *Jackson v. Denno* hearing. *English v. State,* 592 S.W.2d 949 (Tex.Cr.App.1980), *cert. denied,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980). Appellant took the stand in his own behalf at this hearing, and his testimony offers very little conflict with that given by the officers concerning the circumstances surrounding the taking of the statement.

The trial court's finding that the statement was voluntarily given must be evaluated in light of the holdings of the Supreme Court of the United States in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In addressing the question of whether the Fifth, Sixth and Fourteenth Amendments require suppression of a post-arrest confession which was obtained after a defendant had invoked his right to consult counsel, the court stated:

"We now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him...."

Three El Paso detectives went to Houston and arrested the accused. He was tak-

en before a magistrate and given his *Miranda* warning. He was then taken to an office of the Houston police department where an attempt was made to question him about the death of Dana Thompson. He refused to answer questions and said he wanted to talk to an attorney. The interview was then ended, and he was booked into the Houston County Jail overnight. The next day, the three detectives and the accused made a thirteen or fourteen hour trip to El Paso. During that trip there was no mention of the death of Dana Thompson. Upon their arrival at El Paso, he was taken to an office of the detectives and again asked if he wanted to make a statement; he refused and said he was tired and that he wanted to see a lawyer. He was then booked into the El Paso jail. The next day he was again taken to the detectives' office and asked about making a statement and he refused, saying, "I told them I had not talked with a lawyer. I did not want to make a statement until I talked to a lawyer." He said, "I may have asked them about what kind of penalty I was going to receive if convicted." A detective then read from the Penal Code about capital murder charges and about murder in the first degree, and either then or in subsequent interviews, the detectives read to him from the Penal Code and he himself read from that code. He testified that he did not ask for the interview. Detectives testified that he had indicated "from the beginning" that he wanted to talk to them and clear the matter up but not until he had talked to an attorney and had obtained information on possible charges and sentences. They said that there were no refusals by the accused to talk after the first day in El Paso, and that they would talk, and each time it was agreed to meet again and talk some more. "Within a few days" the accused was again taken to the detectives' office and he then told them that he would tell them his version of what happened, but would not put it in writing until he had talked with an attorney. He then gave them an oral statement. Prior to making this oral statement, he had called two attorneys who came to the jail and conferred

with him. He had been advised by them not to make a statement. He did not employ either as their fees were too high, and they wanted too large a down payment. Before talking to these lawyers, he had been before a judge seeking appointment of counsel but was refused because he was not indigent. In Houston, he was working as a plumber. After talking to the two lawyers, he again went before the judge and was again refused indigent status, and he was told to call other lawyers. All of this occurred prior to making the oral statement, and it substantially agrees with what the detectives testified to. He used the detectives' telephone to call a third attorney and scheduled a conference with him. It was agreed that after he talked to that attorney he would again meet with the detectives. That was done, and on this meeting the previous oral account was reduced to writing and signed, after another *Miranda* warning was given. Appellant says he was worried about the capital murder charge and not being able to get an attorney "in a reasonable time," and he was "feeling pressured" by the detectives, "so I just decided to go ahead and give them a statement." The detectives testified that when he came into the office that day, he stated that he now wished to clear the matter up and would give them a statement.

The trial court made findings that "the Defendant fully understood all his rights," and "the statement was made by the accused of his own free will and volition and was completely voluntary." We conclude that the evidence supports those findings, and that it shows that the accused understood his right to counsel and intelligently and knowingly relinquished it. The court's charge fully instructs the jury about the statement and it is not questioned on appeal. We have concluded that the accused made a valid waiver of his *Miranda* rights which he had invoked by his prior refusals to talk. These refusals occurred prior to his conferring with attorneys, and there was no further refusal after talking with them. Prior to making the oral statement, he had conferred with two attorneys; just prior to

making the written statement, he conferred with a third attorney, and at the time of making that statement he had no pending request for counsel. Questioning was not then being done in violation of a refusal. It is apparent that he understood his rights to counsel and knowingly and intelligently waived it. He thus satisfied the settled rule for waiver of that constitutional safeguard as proscribed by *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and *Edwards v. Arizona, supra.*

It concerns us that the accused did not initiate the meetings with the detectives, but he did not dispute their testimony that the meetings were by agreement, and that he had indicated from the beginning that he wanted to clear the matter up and give them a statement—"he told us that much the night we arrived in El Paso." He had an opportunity to refute their testimony, but he simply testified that he did not initiate the meetings. The trial court resolved any conflicts in the evidence and is the judge of the credibility of the witnesses. In any event, the statement which was introduced in evidence was not given until he had consulted with the lawyers, and the right to be free of interrogation exists "until he had consulted with a lawyer." *Edwards v. Arizona, supra.*

*Edwards v. Arizona* disposes of Appellant's contention that once he requested an attorney the law enforcement officials were forever barred from initiating further interrogation. "In concluding that the fruits of the interrogation initiated by the police on January 20, could not be used against Edwards, we do not hold or imply that Edwards was powerless to countermand his election or that the authorities could in no event use any incriminating statements made by Edwards prior to his having access to counsel."

Following an evening of drinking and some marijuana smoking, the Appellant and Dana Thompson were driving around in his car. According to his statement, he removed part of her clothing and was fondling her when she bit him on the neck. He said he pushed her away and felt his neck and at that point she jumped from the car. Appellant stopped the car, went to Thompson and checked her pulse and breathing. He could not find any vital signs and thought she was dead. He panicked and decided to get rid of the body. He dragged her to the side of the road, covered her face with sand, removed the remainder of her clothing, placed it on her body, poured brake fluid over it, and set it on fire. Dana Thompson actually died from asphyxia due to aspiration of sand into the windpipe. Appellant was charged with first degree murder, but, as indicated, his conviction was for the lesser offense of voluntary manslaughter.

■ By point of error, Appellant alleges that the trial court erred in failing to charge the jury on the law of mistake of fact. He thought she was dead when he covered her face with sand and attempted to burn the body. The trial court charged the jury as to the lesser offenses of voluntary and involuntary manslaughter. It denied Defendant's requested instruction on mistake of fact. Mistake of fact constitutes a defense if it negates the culpable mental state. Tex.Penal Code Ann., sec. 8.02. Appellant's requested instruction on mistake of fact was properly refused by the trial court because it was entirely unrelated to the offense of murder. It was submitted and requested in the following form and never amended:

"You are instructed that it is a defense to prosecution that a person through a mistake formed a reasonable belief about a matter of fact if his mistaken belief negated a kind of culpability required for commission of the offense. So, if you find from the evidence in this case that at the time the defendant took the property in question he acted under a mistaken belief that it was his property, or if you have a reasonable doubt thereof, you will acquit the defendant."

Obviously, this request for an instruction on mistake of fact relating to the offense of theft is erroneously misleading in a prosecution for murder. It had no application to

the case before the jury, and the trial court properly refused it. *Stewart v. State,* 438 S.W.2d 560 (Tex.Cr.App.1969); 31 Tex. Jur.2d *Instructions,* secs. 30–33; *Wallace v. State,* 618 S.W.2d 67 (Tex.Cr.App.1981). Tex.Code Crim.Pro.Ann., arts. 36.15 and 36.-19.

All points of error have been considered and all are overruled. The judgment is affirmed.