**John Terry GREEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 727–82.**

Court of Criminal Appeals of Texas, En Banc.

March 21, 1984.

William B. Hardie, Jr., El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and R. Bradford Stiles, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

On an indictment that accused John Terry Green, appellant, of committing the offense of murder, the jury found him guilty of committing the offense of voluntary manslaughter and assessed his punishment at twenty (20) years' confinement in the penitentiary.

In his first ground of error on direct appeal, appellant made the following assertion: "The trial court erred in admitting appellant's confession, [that was given to El Paso police officer John Guerrero], as evidence upon a showing that appellant had been denied assistance of counsel." The State countered: "Appellant made an effective waiver of his right to counsel prior to giving his written confession."

On June 30, 1982, the El Paso Court of Appeals unanimously affirmed appellant's conviction, overruling, inter alia, appellant's ground of error, and on July 28, 1982, unanimously overruled appellant's motion for rehearing without opinion. *Green v. State*, 641 S.W.2d 272 (Tex.App.— El Paso 1982).

In overruling appellant's ground of error, the Court of Appeals relied heavily upon the trial court's findings, namely, "that the [appellant] fully understood all his rights," and "the statement was made by [appellant] of his own free will and volition and was completely voluntary." The Court of Appeals concluded: "[T]he evidence supports those findings, and that it shows that [appellant] understood his right to counsel and intelligently and knowingly relinquished it."

We granted appellant's petition for discretionary review to make the determination whether the Court of Appeals correctly overruled appellant's above ground of error.[1] We find and hold that the State did not establish in the trial court that before appellant gave his written confession to Guerrero he knowingly and intelligently waived his right to counsel. We reverse the judgment of the Court of Appeals and remand the cause to the trial court.

The facts reflect that the decedent, a friend of appellant's, met her untimely death during the night of November 12, 1977, after she, appellant, appellant's sis-

---

1. Appellant also presented in his petition the claim that the trial court erred by not instructing the jury on the defense of mistake of fact. Because we find that the Court of Appeals correctly overruled that contention, we do not address the issue.

ter, and others had been "partying". The record indicates that appellant was the last person who saw the decedent when she was alive. For reasons not reflected in the record of appeal, after the decedent's body was found, the case became inactive and remained in that state until September or October, 1979, when Detective John Guerrero of the El Paso Police Department was assigned the responsibility of ascertaining who caused the death of the decedent. By that time, appellant was living and working in Houston as a plumber's helper for the same employer he had previously worked for in El Paso.

On November 12, 1979, an affidavit for an arrest warrant for appellant's arrest was presented to a County Court at Law Judge of El Paso County, who was apparently then acting as a magistrate. On November 14, 1979, the judge issued a warrant for appellant's arrest. Because neither the affidavit nor the warrant of arrest are in the record of appeal we are unable to state what either reflects.

On either the 19th or 20th of November, Guerrero, a Detective Bonilla and a Sergeant Spencer, who were also members of the El Paso Police Department, drove to Houston to execute the warrant of arrest. On November 20th, near the noon hour, appellant was arrested in Houston at his place of employment.

Appellant was immediately taken before a municipal court judge of Houston who gave him a legal warning,[2] after which appellant was additionally warned by Guerrero,[3] who then attempted to interrogate appellant and find out what he knew about the decedent's death. However, Guerrero's attempts were unsuccessful because "[appellant] refused to answer [any of Guerrero's questions]." Guerrero tells us through his testimony that "the interview was terminated at that point ..." Guerrero also testified that "the interview terminated [because he] was not going to talk to us ... He wanted to counsel with an attorney." Appellant was then placed in the Harris County jail.

The next day, November 21, 1979, appellant was transported by the three El Paso police officers to El Paso. During the twelve to fourteen hour trip from Houston to El Paso no efforts were made by either Guerrero, Bonilla, or Spencer to interrogate appellant about the murder of the decedent. After arrival in El Paso, appellant again told Guerrero: "[B]efore he talked to us he did want to talk to an attorney [of his choice]."

Thereafter, appellant was given the opportunity to contact and employ an attorney of his choice. The record reflects that while incarcerated, but before he signed his written confession, appellant was contacted by three different attorneys, but was unable to employ any of them because he could not afford their respective attorney's fee.

Neither the State nor appellant had any of the attorneys testify at the hearing on

---

2. The preprinted portion of appellant's written confession reflects that the municipal judge warned appellant, "of the accusation against [him] and the affidavit, if any, filed in support of such accusation, that [he had] the right to retain counsel, that [he had the] right to remain silent, that [he had the] right to an attorney being present during any interview with peace officers or attorneys representing the State or during any lineup or confrontation by witnesses, that [he had the] right to terminate the interview at anytime, that [he had the] right to request the appointment of counsel if [he was] indigent and [could not] afford counsel, that [he had the] right to an examining trial, and that [he was] not required to make a statement and that any statement made by [him could] be used against [him].

3. It appears that each time when Guerrero thereafter interrogated appellant, he also gave appellant a legal warning that is on the preprinted portion of the written confession, namely: "that I have a right to have a lawyer present to advise me either prior to any questioning or during any questioning, that if I am unable to employ a lawyer, I have the right to have a lawyer present to advise me either prior to or during any questioning, that I have the right to remain silent and not make any statement at all and that any statement I make may be used in evidence against me at my trial or trials of the offense or offenses concerning which this statement is made, and I have a right to terminate this interview at any time."

appellant's motion to suppress. Thus, we must depend upon appellant's testimony, which was uncontradicted on this point, as to what transpired when he was contacted by the attorneys. The gist of his testimony is that each attorney contacted him, quoted him a fee, and, after determining appellant could not afford to pay the fee, then terminated the visit and never had any further contact with appellant. However, it appears that before each attorney left appellant, each gave appellant the following gratuitous advice: "Don't give a statement."

It is undisputed that after appellant was unable to employ either of the first two attorneys, because he could not afford the fee that each had quoted, he then twice sought to have the county court at law judge who had issued the warrant of arrest appoint him counsel because of indigency. However, on each occasion the judge refused his request because he did not believe appellant was indigent. Nevertheless, the judge also gave appellant some gratuitous advice; continue trying to find an attorney he could afford. The record reflects that appellant did continue to try to employ counsel. However, his efforts were again unsuccessful. Appellant testified as follows regarding the visit he had with the last attorney: "He [the attorney] was asking too much money and also he said he would talk with my father about the case and that's the last I heard about it."

The record also reflects that on November 22, 1979, the day after appellant arrived in El Paso from Houston and was booked into jail, without appellant requesting his presence, but on his own volition, Guerrero "went and talked to [appellant]." However, as he had done previously, appellant "stated [to Guerrero] ... before he talked to us he did want to talk to an attorney."

Notwithstanding appellant's persistent refusals to talk to Guerrero about the accusation, and his continued requests for counsel, in addition to the above, the record also reflects that each day thereafter Guerrero would summon appellant from his cell to Guerrero's office, "to talk." Guerrero testified that this was done pursuant to what he described as "an agreement," which he testified was made after the first meeting he had with appellant after appellant was returned from Houston. "We would talk. We would discuss and then we would agree to meet the following day, yes, sir. Then [each day thereafter] we would go get him and bring him back to our office."

The record also reflects that at the very last meeting that occurred before appellant gave his written confession to Guerrero, appellant again told Guerrero, "he wanted to talk to an attorney before he made it [4] a written statement."

As previously pointed out, appellant did thereafter have contact with an attorney, but, and as also previously pointed out, he was unable to employ that attorney to represent him because he could not afford the attorney's fee.

Appellant tells us through his testimony that was adduced at the hearing held on the motion to suppress why he ultimately signed the written confession:

> Well, by that time I was worried about the capital murder charge,[5] also the fact that I was not going to be able to get an attorney to help me with any reasonable amount of time and I didn't—I was feeling pressured from the detectives, so I just decided to go ahead and give them a statement.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in inter-

---

4. The word "it" refers to an oral statement appellant had previously given Guerrero. However, in Texas, it is only as an exception that an oral statement is admissible evidence. This is because the Legislature has made a statutory determination that proof of extra-judicial oral confessions of an accused made while in custody are generally unreliable. *Butler v. State,* 493 S.W.2d 190, 193 (Tex.Cr.App.1973). We also point out that no effort was made by the prosecution to introduce into evidence the oral confession.

5. The record reflects that during the conversations appellant had with the police, discussions occurred as to what the punishment was for the offenses of capital murder and murder.

preting the Fifth Amendment prohibition against compelled self-incrimination, the Supreme Court of the United States held that if the accused indicates he wishes to remain silent, "the interrogation must cease," and, if the accused requests counsel, "the interrogation must cease until an attorney is present."

> [The defendant] has a right to the presence of an attorney, either retained or appointed [prior to giving a confession]. The defendant may waive effectuation of these rights provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning [by the police]. 384 U.S. at 444, 445, 86 S.Ct. at 1612.

Subsequently, in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981),[6] the Supreme Court held that once the accused had invoked his right to counsel, further interrogation in counsel's absence is forbidden unless the accused initiates conversation with the police. Also see, *Porier v. State,* 662 S.W.2d 602 (Tex. Cr.App.1984); *Evans v. State,* 659 S.W.2d 405 (Tex.Cr.App.1983); *Wilkerson v. State,* 657 S.W.2d 784 (Tex.Cr.App.1983); *Phifer v. State,* 651 S.W.2d 774 (Tex.Cr.App.1983); and *Coleman v. State,* 646 S.W.2d 937 (Tex.Cr.App.1983), where this Court has invoked and applied *Edwards v. Arizona,* supra.

The Supreme Court also made it clear in *Edwards v. Arizona,* supra, that waiver of counsel guaranteed by the Fifth Amendment, see *Miranda v. Arizona,* supra, is on the same plane as waiver of counsel guaranteed by the Sixth Amendment. It further pointed out that "waivers of counsel must be measured by the *Johnson v. Zerbst,* [304 U.S. 458, 464, 58 S.Ct. 1019 [1023], 82 L.Ed. 1461 (1938)], standard,"

which is that once an accused has invoked his right to counsel, waiver of that right must not only be voluntary, but such must also constitute a knowing and intelligent relinquishment or abandonment of the right to counsel, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023. Also see *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975).

This Court has held that before there can be waiver of counsel at trial, the record must clearly reflect that the waiver was a knowing and intelligent one, *Campbell v. State,* 606 S.W.2d 862 (Tex.Cr.App.1980), and courts will indulge ever reasonable presumption against waiver of counsel at trial. *Jordan v. State,* 571 S.W.2d 883 (Tex.Cr. App.1978).

In this cause, it is undisputed that immediately after appellant was given a legal warning by a judge, which warning included the right to counsel, and a legal warning by Guerrero, which warning also included the right to counsel, appellant affirmatively made it clear that he wanted to obtain an attorney of his choice to assist him with the legal problem he then had, but was prevented from doing so only because of his inability to pay the demanded fee. We find that appellant was denied a "full and fair opportunity to exercise [his] option," whether or not to have counsel assist him, *Faulder v. State,* 611 S.W.2d 630, 642 (Tex. Cr.App.1980), solely and only because he could not afford any of the fees that each attorney he saw demanded. His confession was simply an act of frustration in not being able to obtain counsel of his choice. Accordingly, appellant's right to counsel was not "scrupulously honored" and the guidelines specified by *Miranda v. Arizona,* supra, were thereby violated. Also see *Faulder v. State,* supra at 640, and *Hearne*

---

**6.** In *Solem v. Stumes,* ⸺ U.S. ⸺, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), the Supreme Court held that *Edwards v. Arizona,* supra, was not to be applied retroactively to a post-conviction collateral review of a final conviction proceeding. "For purposes of this case, that is all we need

decide about Edwards." Of course, appellant is not before this Court pursuant to any post-conviction collateral review proceeding, but, instead, is here pursuant to the direct appeal procedures provided by the Legislature of this State.

*v. State*, 534 S.W.2d 703 (Tex.Cr.App.1976), both of which concerned whether the defendant waived his right to remain silent. From the facts and circumstances of this case, the State did not meet the heavy burden imposed by *Miranda v. Arizona*, supra, of demonstrating that appellant knowingly and intelligently waived his right to counsel.

In *Ochoa v. State*, 573 S.W.2d 796, 800 (Tex.Cr.App.1978), which has many similar facts to the case at Bar, this Court stated therein: "We read this language in Miranda literally; 'where a defendant indicates in any way that he desires to invoke his right to counsel, the interrogation must cease.'" Also see *United States v. Priest*, 409 F.2d 491 (5th Cir.1969), where a panel of the Fifth Circuit Court of Appeals stated that if the accused requests counsel, and such request is disregarded and the interrogation proceeds, "any statement taken thereafter cannot be a result of waiver but must be presumed a product of compulsion, subtle or otherwise." Further, see *Ochoa v. State*, supra, where this Court pointed out the fact that the defendant subsequently confessed is not sufficient to establish a waiver of the right to counsel. Also see *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), and *Reed v. State*, 518 S.W.2d 817 (Tex.Cr.App.1975).

In *Castillo v. State*, 616 S.W.2d 620 (Tex. Cr.App.1981), which was also a case from El Paso, the defendant requested the appointment of counsel, but counsel was not appointed. Thereafter, without the assistance of counsel, a confession was obtained from the defendant. This Court, speaking through Judge Odom, stated the following at page 623 of the opinion before ordering the conviction reversed because of the admission into evidence of the defendant's confession:

> Likewise, we find no evidence in this record to establish that appellant's request for counsel before the magistrate was not a request for counsel during the interrogation which shortly followed. The State has not met its heavy burden to show that appellant waived his right

to counsel. Accordingly, the statement was inadmissible. Further, since the confession was the only evidence linking appellant to the commission of the crime, harm is definitely presented.

In this cause, it is undisputed that prior to giving the written confession, appellant, not once, but twice, requested that he be appointed counsel, and not once but twice his request was refused. Furthermore, as in *Castillo v. State*, supra, appellant's confession is the main piece of evidence linking him to the commission of the crime. The admission into evidence of the confession was certainly not harmless error.

Notwithstanding the facts of this case, see supra, the State argued, and the Court of Appeals agreed, that because appellant had "consulted" with three attorneys, with at least two of the three attorneys telling him not to give any statements to the police, and because appellant thereafter voluntarily gave a confession, that this constituted both waiver of counsel and a countermand to his earlier decision not to talk with the authorities about the accusation without counsel.

We do not believe that it can seriously be argued that a brief conversation with an attorney regarding nothing more than what the fee for *future* services will be, and whether the fee could be paid by the accused, is in any way the equivalent or the functional equivalent of an attorney rendering effective assistance to an accused. Accordingly, we hold that the value and significance of the "free" advice that was given by the two unretained and unhired attorneys, both of whom had just affirmatively rejected appellant as a client because he could not afford to pay either of the demanded fees, is highly questionable; especially when the relationship of attorney-client was never really established in the sense that the attorney had committed himself to see after the imminent legal problem that then confronted appellant.

We believe that "Assistance of counsel" means rendering the effective assistance by an attorney who is concerned

over the welfare of his client and not just his pocketbook. Under the circumstances of this case, we are unable to hold that appellant's "consultation" with any of the three attorneys he had contact with is sufficient to establish that appellant and any of the attorneys ever established an attorney-client relationship to the extent that either of the attorneys had agreed to represent appellant or to assist him in the legal problem he then had. We are also unable to hold that appellant's failure to obtain counsel, because he could not afford to pay the attorney's fee, constitutes waiver of counsel. Compare *Martinez v. State*, 645 S.W.2d 322 (Tex.App.—Corpus Christi 1982).

Lastly, but from the facts and circumstances of this case, it is clear as crystal to us that had appellant been able to afford any of the fees that each of the attorneys who visited him had set, or had been afforded the assistance of appointed counsel, he would have had the services of an attorney at the time he gave the police the written confession. Compare, however, *Cruz v. State*, 586 S.W.2d 861 (Tex.Cr.App. 1979).

We, of course, are unable to state whether, if appellant had had the effective assistance of counsel prior to his giving the written confession to Guerrero, he would not have given the written confession. See *Cruz v. State*, supra. Nevertheless, we hold that he should have had the effective assistance of counsel before he had to make that decision. Under the facts and circumstances of this case, we hold that the State did not sustain its heavy burden of establishing that appellant knowingly and intelligently waived his right to the assistance of counsel, as provided by both the Federal and State Constitutions.

We also point out that although we acknowledge that it is not the place of the police to obtain, locate, or recommend an attorney for the person they seek to interrogate, nevertheless, in a situation such as the instant one, where the appellant constantly and continuously expressed a desire to have an attorney of his choice to assist him, but was unsuccessful in obtaining the assistance of counsel of his choice solely because he was unable to afford the fee that each attorney he saw had set, the police should have throttled their quest for information from him, and not initiated or reinitiated further conversation with him absent counsel.

For all of the above and foregoing reasons, the judgment of the Court of Appeals is reversed and the cause remanded to the trial court.

CLINTON, J., concurs in the result.