# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00465-CR

**Luke Masood Arabzadegan, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NO. D-1-DC-02-500454, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING**

## D I S S E N T I N G   O P I N I O N

There is no question that Luke Arabzadegan attempted to waive his right to counsel when he gave his statement to the police. Arabzadegan asserts, however, that the attempted waiver was invalid, and that his confession was obtained in violation of his Sixth Amendment right to counsel, because the State was on notice that he was represented by counsel before he was interrogated.

Justice Waldrop's majority opinion concludes that the interrogation was proper because Arabzadegan failed to prove that he had an attorney-client relationship with the attorneys who contacted the sheriff's office on his behalf. Justice Puryear, in his concurring opinion, also concludes that the interrogation was proper because Arabzadegan did not personally invoke his right to counsel. With all due respect to my colleagues, I find neither of these opinions persuasive. Believing that Arabzadegan's Sixth Amendment right to counsel was violated, I dissent.

## I.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

The right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding. *Maine v. Moulton*, 474 U.S. 159, 168-69 (1985). Recognizing that a layman accused of a crime is incapable of effectively representing himself, the amendment guarantees an accused "the right to rely on counsel as a 'medium' between him and the State." *Id.* at 176. "The Sixth Amendment . . . imposes on the State an affirmative obligation to respect and preserve the accused's choice to seek this assistance. . . . [A]t the very least, the prosecutor and police have an affirmative obligation not to act in a manner that circumvents or dilutes the protection afforded by the right to counsel." *Id.* at 171.

Because the right to the assistance of counsel is shaped by the need for the assistance of counsel, the right attaches at the initiation of adversarial judicial proceedings and applies to all critical stages of the criminal justice process. *Fellers v. United States*, 540 U.S. 519, 523 (2004); *Moran v. Burbine*, 475 U.S. 412, 429 (1986); *Green v. State*, 872 S.W.2d 717, 719 (Tex. Crim. App. 1994). All members of the panel agree that Arabzadegan's Sixth Amendment right to counsel had attached at the time he was interrogated. *See Burbine*, 475 U.S. at 328; *Green*, 872 S.W.2d at 720; *Upton v. State*, 853 S.W.2d 548, 556 (Tex. Crim. App. 1993); *Barnhill v. State*, 657 S.W.2d 131, 132 (Tex. Crim. App. 1983).

## II.

Relying on the opinion in *Terrell v. State*, 891 S.W.2d 307, 313-14 (Tex. App.—El Paso 1994, pet. ref'd), the majority asserts that the Sixth Amendment right to

counsel requires a contractual attorney-client relationship. *See also Plattenburg v. State*, 972 S.W.2d 913, 917 (Tex. App.—Beaumont 1998, pet. ref'd); *Dams v. State*, 872 S.W.2d 325, 328 (Tex. App.—Beaumont 1994, no pet.).[1] The majority opinion concludes that Arabzadegan's situation does not come within the scope of the Sixth Amendment's protection because Arabzadegan did not prove that he had established, expressly or by conduct, a mutually binding contract for legal services with Joe Turner's law firm before the interrogation began.[2] This conclusion is both inconsistent with established authority and contrary to the interests served by the Sixth Amendment.

---

[1] Both *Plattenburg* and *Dams* rely on the questionable authority of *Lucas v. State*, 791 S.W.2d 35, 47-48 (Tex. Crim. App. 1989). *See Plattenburg* v. State, 972 S.W.2d 913, 917 (Tex. App.—Beaumont 1998, pet. ref'd); *Dams v. State*, 872 S.W.2d 325, 328 (Tex. App.—Beaumont 1994, no pet.). In *Lucas*, the court of criminal appeals stated that "it would be counterproductive to our system of justice . . . to allow counsel to invoke the [Sixth Amendment] constitutional protection on behalf of a criminal defendant who has not yet met with counsel and has not himself expressed a desire to invoke that protection." 791 S.W.2d at 47. As authority for this holding, the court of criminal appeals improperly relied on its opinions in *Holloway v. State* and *Dunn v. State*. *See Lucas*, 791 S.W.2d at 47 (citing *Holloway v. State*, 691 S.W.2d 608 (Tex. Crim. App. 1984), *rev'd* 475 U.S. 1105 (1986); *Dunn v. State*, 696 S.W.2d 561 (Tex. Crim. App. 1985)). At the time *Lucas* was decided, both *Holloway* and *Dunn* had been overruled by the United States Supreme Court's opinions in *Michigan v. Jackson* and *Moran v. Burbine*. *See Holloway v. Texas*, 475 U.S. 1105 (1986); *Goodwin v. State*, 799 S.W.2d 719, 729 (Tex. Crim. App. 1990) ("the holding in *Dunn* has been implicitly overruled by the Supreme Court in *Moran v. Burbine*."). Moreover, *Lucas* was decided before the court of criminal appeals' opinion on remand in *Holloway* and has been implicitly overruled by that case. *See Holloway v. State*, 780 S.W.2d 787, 791 (Tex. Crim. App. 1989).

[2] In addition to *Terrell*, the majority cites several opinions, most of them civil and none of them arising under the Sixth Amendment, holding that the attorney-client relationship is a contractual one and that the parties must explicitly or by their conduct manifest an intention to create it. *See Hill v. Bartlette*, 181 S.W.3d 541, 547 (Tex. App.—Texarkana 2005, no pet.) (wrongful death action; issue was alleged conflict of interest of insurer's attorney); *State v. DeAngelis*, 116 S.W.3d 396, 403 (Tex. App.—El Paso 2003, no pet.) (perjury prosecution; issue was attorney-client privilege); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 836 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (civil action against attorney for breach of fiduciary duty; issue was when contract with client terminated); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 2000, writ dism'd by agr.) (legal malpractice; issue was jury instruction's definition of "agreed"); *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied) (legal malpractice; issue was whether attorneys were entitled to summary judgment).

The notion that the Sixth Amendment protects only an attorney-client relationship formed under contract law principles is contrary to the opinion of the United States Supreme Court in *Burbine*. Burbine was arrested on a burglary charge and became a suspect in an unrelated murder. 475 U.S. at 416. Unbeknownst to Burbine, his sister attempted to retain a lawyer in the public defender's office to represent him. *Id*. at 415-17.[3] That attorney then contacted the police to inform them that Burbine was represented by counsel. *Id*. at 417. The attorney was assured by the police that Burbine would not be questioned that day. *Id*. Later that evening, Burbine was questioned by officers from another jurisdiction about the murder. *Id*. At the interrogation, Burbine stated that he did not want counsel, waived his *Miranda* rights, and gave an inculpatory statement. *Id*. at 417-18; *see Miranda v. Arizona*, 384 U.S. 436, 472-74 (1966) (discussing Fifth Amendment right to counsel during custodial interrogation). Although the attorney contacted by Burbine's sister had been misled, the lower court found that the State had not colluded or conspired to secrete Burbine from his attorney. *Id*. at 418. On this record, the Supreme Court held that Burbine had validly waived his Fifth Amendment rights at the interrogation. *See id*. at 427.[4]

The Court also rejected Burbine's Sixth Amendment challenge to the admission of his confession because the interrogation preceded the commencement of adversarial proceedings. *Id*. at 432. The Court made it clear, however, that the police could not have initiated the interrogation and obtained a valid waiver of counsel under these circumstances had Burbine's Sixth Amendment rights attached. *See id*. at 428. The Court wrote, "[W]e readily agree that once the right

---

[3]   The majority opinion posits that different standards govern the establishment of an attorney-client relationship in retained and appointed counsel cases. Although a public defender, the attorney in *Burbine* had not been appointed.

[4]   I will discuss this later in this opinion.

4

*has* attached, it follows that the police may not interfere with the efforts of a defendant's attorney to act as a '"medium" between [the suspect] and the State' during the interrogation." *Id*.

The origin and nature of the relationship between Burbine and the attorney in that case is remarkably similar to the origin and nature of the relationship between Arabzadegan and the attorneys in this cause. Burbine, like Arabzadegan, was completely unaware of the activities of his sister and the attorney on his behalf. Burbine, like Arabzadegan, had never met the attorney. In fact, the state supreme court had held, as the majority does here, that no attorney-client relationship existed between Burbine and the attorney, stating among other things that the right to counsel cannot be invoked on behalf of a suspect by a family member or other third party. *State v. Burbine*, 451 A.2d 22, 29-30 (R.I. 1982). Although the existence of an attorney-client relationship was conceded before the Supreme Court, the Court took the trouble to observe that "the type of circumstances that would give rise to the right [to counsel under the Sixth Amendment] would certainly have a federal definition." *See Burbine*, 475 U.S. at 429 n.3. In other words, the Sixth Amendment right to counsel cannot be circumscribed by state contract law, as the Rhode Island Supreme Court had erroneously held in *Burbine* and as the majority erroneously suggests here.

Whether an accused has a relationship with an attorney that is entitled to protection under the Sixth Amendment must be determined in light of the interests the Sixth Amendment is designed to serve, and not merely under principles of contract law. It cannot be overstated that the right to the assistance of counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding. *Moulton*, 474 U.S. at 168-69. The Sixth Amendment guarantees an accused "the right to rely on counsel as a 'medium' between him and the State." *Id*. at 176. The State has an affirmative responsibility to respect and preserve the right to counsel, and prosecutors

5

and police have an affirmative obligation not to act in a manner that circumvents or dilutes the protection afforded by the right to counsel. *Id*. at 171. The majority's insistence on the creation of an attorney-client relationship under civil contract law fails to honor these bedrock Sixth Amendment principles.[5]

It is a common occurrence for a third party—usually a parent, spouse, or other family member—to obtain an attorney for a person who finds himself incarcerated and accused of a crime. Whether or not such an arrangement creates a formal attorney-client relationship for the purpose of deciding a question of attorney-client privilege, legal malpractice, or conflict of interest, it is sufficient to create a relationship between the attorney and the accused warranting recognition under the Sixth Amendment. The majority expresses the concern that an accused cannot be bound by an attorney-client relationship established on his behalf by a third party. But the relevant question is not whether the family's retention of an attorney is binding on the accused, but whether it is binding on the police. Contract principles do not bind the police; it is the Sixth Amendment safeguards aimed at preserving the sanctity of the attorney-client relationship that constrain the police from interfering with the efforts of an attorney to communicate with his client. *See Patterson v. Illinois*, 487 U.S. 285, 290 n.3, 297 n.9 (1988); *Burbine*, 475 U.S. at 428.

---

[5] The majority opinion cites four court of criminal appeals opinions said to recognize the contractual nature of the creation of the attorney-client relationship. Three of these opinions are not Sixth Amendment cases. *Mixon v. State*, No. PD-0018-06, 2007 Tex. Crim. App. LEXIS 654, at *6-7 (Tex. Crim. App. May 23, 2007) (holding that attorney-client privilege applied to information acquired by lawyer during discussions looking toward employment); *Strong v. State*, 773 S.W.2d 543, 552 (Tex. Crim. App. 1989) (holding that letter from defendant to co-defendant's lawyer was not privileged); *Green v. State*, 667 S.W.2d 528, 532-33 (Tex. Crim. App. 1984) (holding that defendant's decision not to employ counsel due to inability to afford fee did not constitute waiver of Fifth Amendment right to counsel under *Miranda*). The fourth opinion is a Sixth Amendment case that supports my argument that Arabzadegan's right to counsel was violated. *Upton v. State*, 853 S.W.2d 548, 556-57 (Tex. Crim. App. 1993).

In light of the strong policy that the State not circumvent or dilute the Sixth Amendment right to rely on counsel, no one can reasonably suggest that the police should be permitted to decide the contractual merits of a lawyer's claim that he represents an accused in custody before allowing the lawyer to speak to his client. Not only is this idea inconsistent with Sixth Amendment values, police officers and sheriff's deputies are not qualified to make such an evaluation and should not be expected to do so. Furthermore, to require the accused to prove the existence of a contractual attorney-client relationship, as the majority would do, impermissibly shifts to the accused the burden the constitution places on the State to prove a valid waiver of counsel. *See Michigan v. Jackson*, 475 U.S. 625, 633 (1986). The State's duty to act in a manner that does not circumvent or dilute the right to counsel requires that prosecutors and police respect an attorney's claim of representation unless they have a reasonable basis to question the claim.[6]

If the State's agents had any reason to believe that Arabzadegan was not represented by counsel, it is not apparent from the record. At the hearing on Arabzadegan's motion to suppress, Detective Halvorsen testified that Joe Turner called him before Arabzadegan was arrested to tell him that he had been retained. Halvorsen added, "I don't know if [Arabzadegan] retained [Turner] or if his family retained him." Josh Saegert, the attorney associated with Turner who went to the sheriff's office to speak to Arabzadegan, testified that he also did not know whether Turner had spoken directly with Arabzadegan. Neither Arabzadegan nor Turner testified at the suppression hearing. Thus, the record shows that (1) an attorney contacted the lead investigator at the sheriff's office to

---

[6] The majority opinion expresses the fear that in the absence of strict adherence to contract law principles, third parties might "manipulate the process without the knowledge or involvement of either the accused or the police." Of course, I do not contend that the police can be bound by a relationship between a lawyer and an accused, whatever its purported basis, of which they are not aware.

inform him that Arabzadegan was represented by counsel,[7] and (2) within minutes of Arabzadegan's arrest, an associate of the first attorney arrived at the sheriff's office demanding to meet with Arabzadegan. It is irrelevant whether the officers who interrogated Arabzadegan were personally aware of these communications because we impute knowledge from one state actor to another. *Id*. at 634; *Holloway v. State*, 780 S.W.2d 787, 796 n.11 (Tex. Crim. App. 1989).[8] The State did not elicit any evidence that Arabzadegan had knowingly rejected the assistance of Turner and Saegert, a subject I discuss below, or that the police had any other reasonable basis to doubt the attorneys' claims of representation. *See Upton*, 853 S.W.2d at 557. The evidence before us establishes as a matter of law that Turner and his associate Saegert were Arabzadegan's attorneys for the purposes of the Sixth Amendment.

## III.

The concurring opinion argues that Arabzadegan's Sixth Amendment right to counsel was not violated at the interrogation because he did not personally invoke his right to counsel. In this view, the interrogating officers were entitled to disregard the attorneys' claims that they represented Arabzadegan so long as Arabzadegan did not say that he wanted a lawyer. This

---

[7] The State contends that Turner did not unambiguously state in this telephone call that he represented Arabzadegan, but the court of criminal appeals has held that a similar communication by an attorney was sufficient to conclusively establish representation. *See Upton*, 853 S.W.2d at 556-57.

[8] The concurring opinion suggests that it is unfair or impractical to "instantaneously" impute to the officers interviewing Arabzadegan the knowledge that Saegert was outside wanting to talk to him. This argument, and a similar argument in the majority opinion, overlooks Halvorsen's testimony, which shows that the lead investigator knew that Turner had been retained days before Arabzadegan was arrested and questioned.

argument is contrary to holdings by both the Supreme Court and the Texas Court of Criminal Appeals.

The State had the burden to show that Arabzadegan validly waived the Sixth Amendment right to counsel. *See Jackson*, 475 U.S. at 633; *Upton*, 853 S.W.3d at 553; *Robinson v. State*, 851 S.W.2d 216, 224 (Tex. Crim. App. 1991). An accused who is not represented by counsel and who has not invoked his right to counsel may submit to interrogation, validly waiving both his Fifth and Sixth Amendment rights, if he is first given the *Miranda* warnings. *See Patterson*, 487 U.S. at 292-93; *Robinson*, 851 S.W.2d at 224 (citing *Patterson*). This does not mean, however, that all Sixth Amendment challenges to the conduct of post-accusation interrogation will fail whenever the challenged practice would pass constitutional muster under *Miranda*. *Patterson*, 487 U.S. at 296 n.9.

> [B]ecause the Sixth Amendment's protection of the attorney-client relationship—"the right to rely on counsel as a 'medium' between [the accused] and the State"—extends beyond *Miranda*'s protection of the Fifth Amendment right to counsel [citing *Moulton*, 474 U.S. at 176], there will be cases where a waiver which would be valid under *Miranda* will not suffice for Sixth Amendment purposes.

*Id*. After a formal accusation has been made, and a "suspect" becomes an "accused" within the meaning of the Sixth Amendment, "the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation." *Jackson*, 475 U.S. at 632.

Once an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect, and the police may not interfere with the efforts of an attorney to communicate with his client. *Patterson*, 487 U.S. at

9

290 n.3. In *Patterson*, the Supreme Court explained that the protections of the Sixth Amendment are not coextensive with those provided by the Fifth Amendment. The Court wrote, "[W]e have permitted a *Miranda* waiver to stand where a suspect was not told that his lawyer was trying to reach him during questioning; in the Sixth Amendment context, this waiver would not be valid." 487 U.S. at 297 n.9. The Court was referring to its opinion in *Burbine*. *Id*.

The Supreme Court held that Burbine had validly waived his Fifth Amendment rights in accordance with *Miranda* even though, without his knowledge, his sister had obtained an attorney for him and the attorney had contacted the police to inform them that Burbine was represented by counsel. *Burbine*, 475 U.S. at 427. The Court explained that the procedure required by *Miranda* represented a careful balance between the State's legitimate interest in eliciting admissions and an individuals's right against self-incrimination. *Id*. The Court held that a rule requiring police to inform the suspect of an attorney's efforts to contact him "would upset this carefully drawn approach in a manner that is both unnecessary for the protection of the Fifth Amendment privilege and injurious to legitimate law enforcement." *Id*. The Court made it clear, however, that once the Sixth Amendment attaches, this balance shifts and the police may not interrogate an accused without revealing the attorney's presence: "[W]e readily agree that once the right *has* attached, it follows that the police may not interfere with the efforts of a defendant's attorney to act as a '"medium" between [the accused] and the State' during the interrogation." *Id*. at 428.

Drawing on the Supreme Court opinions discussed above, the court of criminal appeals has held that when the police know that an accused is represented by counsel, the Sixth Amendment precludes dissolution of that relationship in the absence of counsel. *Holloway*, 780 S.W.2d at 795. In such a case, the police may initiate interrogation only through notice to

10

defense counsel, and an accused's unilateral waiver of his Sixth Amendment right to counsel is invalid. *Upton*, 853 S.W.2d at 553. In *Upton*, the court further held that the application of this rule does not depend on an accused's invocation of his right to counsel, because the rule is designed to preserve the integrity of the attorney-client relationship once it has been established. *Id*.

By asserting that Arabzadegan forfeited his Sixth Amendment right to counsel by failing to personally invoke it, the concurring opinion effectively equates the Sixth Amendment right with the Fifth Amendment right. But the Fifth Amendment right to counsel recognized in *Miranda* is designed to serve the narrow purpose of assuring that any confession resulting from custodial interrogation is voluntary. *See Burbine*, 475 U.S. at 420. The Sixth Amendment right to counsel, on the other hand, protects the attorney-client relationship. *See Patterson*, 487 U.S. at 290 n.3 ("Once an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect."); *Burbine*, 475 U.S. at 428 ("[O]nce the [Sixth Amendment] right *has* attached, it follows that the police may not interfere with the efforts of a defendant's attorney to act as a '"medium" between [the suspect] and the State.'"); *Holloway*, 780 S.W.2d at 795 ("[W]e hold that where a relationship between the accused and his attorney has become applicable, the Sixth Amendment precludes dissolution of that relationship in the absence of counsel."); *Upton*, 853 S.W.2d at 553 ("Application of the *Holloway* rule does not depend on an accused's invocation of his Fifth or Sixth Amendment rights to counsel, because this rule is designed to preserve the integrity of the attorney-client relationship once it has been established."). Arabzadegan does not contend that his confession was involuntary or that his Fifth Amendment rights were otherwise violated. Instead, Arabzadegan argues that the officers who interrogated him did not respect his right to rely on counsel as a medium between him and the State. The concurring

11

opinion errs by holding that in the context of a custodial interrogation of a person formally accused of a crime, the Sixth Amendment places no obligations on the police beyond those imposed by *Miranda* under the Fifth Amendment.

Arabzadegan's failure to expressly request counsel during the interrogation does not excuse the officers' failure to notify him that retained counsel was present to assist him. Under the circumstances shown here, Arabzadegan's silence did not effectively waive or otherwise forfeit his Sixth Amendment right to counsel.

## IV.

The majority insists that an accused is absolutely entitled to reject the assistance of an attorney recruited by third parties. I insist that an accused must be given a reasonable opportunity to make that decision. Arabzadegan did not knowingly reject the assistance of the attorneys employed by his parents because the police kept their existence a secret from him. The majority stresses the importance of mutuality in the attorney-client relationship, but it condones police conduct designed to prevent Arabzadegan from knowingly and voluntarily choosing whether to accept the assistance of Turner and Saegert or go it alone.

I do not contend that an accused cannot waive his Sixth Amendment right to counsel if a lawyer has been retained for him, but it would be foolish to suggest that knowledge that a retained attorney is standing outside the door of the interrogation room would not influence the accused's decision. The police understand this; it is why they want to proceed with an interrogation without imparting this knowledge to the accused. But a waiver of counsel made in the absence of this crucial information cannot be truly voluntary. Once the police know that an attorney has been

12

retained for the accused and is present, the Sixth Amendment requires them to reveal this information to the accused before proceeding with an interrogation.

## V.

The record shows that the police were on notice that an attorney was working on Arabzadegan's case before Arabzadegan was arrested. In fact, an attorney was present at the sheriff's office when Arabzadegan waived his *Miranda* rights, but this attorney was unable to gain access to his client. There is no evidence that would justify the officers' ignoring the attorneys' claims of representation. *See Burbine*, 475 U.S. at 428. Because Arabzadegan was represented by counsel, the police could not initiate interrogation without notice to counsel, and Arabzadegan's unilateral waiver of his right to counsel was invalid. *See Upton*, 853 S.W.2d at 553. At the very least, the officers violated their affirmative obligation not to act in a manner that circumvents or dilutes the right to counsel by ignoring Turner's and Saegert's claims to represent Arabzadegan and by obtaining Arabzadegan's waiver of the right to counsel without informing him that an attorney claiming to represent him was present and seeking to talk to him. *See Patterson*, 487 U.S. at 297 n.9. On this record, I would hold that Arabzadegan's confession was obtained in violation of his Sixth Amendment right to counsel and that the district court erred by overruling his motion to suppress. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005).

The rules of appellate procedure require us to reverse a conviction for constitutional error unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* Tex. R. App. P. 44.2 (incorporating holding in *Chapman v. California*, 386 U.S. 18,

13

24 (1967)). We must be especially cautious when applying the *Chapman* standard in cases where a defendant's own confession was erroneously admitted:

> A confession is like no other evidence. Indeed "the defendant's own confession is probably the most probative and damning evidence that can be admitted against him . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have a profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so."

*Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (quoting *Bruton v. United States*, 391 U.S. 123, 139-40 (1968) (White, J. dissenting)). I cannot conclude beyond a reasonable doubt that the district court's erroneous decision to admit Arabzadegan's confession did not contribute to his decision to plead guilty.

I would reverse the judgment of conviction and remand the cause to the district court for a new trial.

---

Bea Ann Smith, Justice

Before Justices Puryear, Waldrop and B. A. Smith\*

Filed: July 18, 2007

Publish

\*Before Bea Ann Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).