Clifton Edmond GREEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1388–91.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 12, 1994.

Kenneth W. Smith, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Alan Curry & Natalie Fleming, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW*

PER CURIAM.

Appellant was convicted of the offense of possession of cocaine in an amount less than 28 grams, and his punishment, enhanced by two prior felony convictions, was assessed at confinement for 50 years. In an unpublished opinion the court of appeals affirmed his conviction, holding, *inter alia*, that although appellant was entitled to counsel under the Sixth Amendment at his so-called preliminary initial appearance ("PIA"), he essentially waived that right by not requesting appointment of counsel at that time under Article 1.051(c), V.A.C.C.P. *Green v. State*, No.

01–90–00662–CR, 1991 WL 189699 (Tex. App.—Houston [1st], delivered September 26, 1991). In his petition for discretionary review appellant now contends that the court of appeals erred to conclude he waived his right to counsel at the PIA by failing to invoke it. In a cross-petition for discretionary review the State argues that in any event the court of appeals erred to hold appellant had a Sixth Amendment right to counsel at the PIA. We granted both petitions pursuant to Tex.R.App.Pro., Rule 200(c)(2).

*I.*

Appellant was arrested without a warrant on March 2, 1990, for the offense of possession of cocaine. The next day, on March 3, a felony complaint was filed. The complaint contains a notation that indicates bail in the amount of $10,000, but the record is silent as to whether bail was actually set at this amount on March 3, and, if so, by whom.[1] On March 4, 1990, appellant appeared before a magistrate for what we are told was his PIA. At this time the magistrate warned appellant pursuant to Article 15.17(a), V.A.C.C.P., and, according to the docket sheet, a finding of probable cause was then made.[2] The record does not demonstrate, and appellant does not contend, that the magistrate set bail at this time.[3] The

---

1. We might speculate that this notation on the felony complaint represents no more than a recommendation from an assistant district attorney at in-take, "based on a printed form bail schedule utilized in criminal cases." *Alberti v. Sheriff of Harris County, Texas*, 406 F.Supp. 649, at 662 (S.D.Tex.1975). The record before us in this cause, however, does not affirmatively establish this.

2. Because appellant was arrested without a warrant, his further detention without a finding of probable cause would violate the Fourth Amendment, under *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), as well as *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In any event, even a complaint in support of an arrest warrant, Article 15.04, V.A.C.C.P., will not justify continued detention absent a second determination of probable cause, as a matter of state law. See *Ex parte Garcia*, 547 S.W.2d 271 (Tex.Cr.App.1977). Why any probable cause determination was made at a PIA rather than at an examining trial, Article 16.01, V.A.C.C.P., is a question not raised by either party in the present cause. See text, *post*.

3. Appellant equates the PIA with a so-called "Forty Eight Hour Hearing." See *Ex parte Clear*, 573 S.W.2d 224 (Tex.Cr.App.1978); *Alberti v. Sheriff of Harris County, Texas*, 406 F.Supp. 649 (S.D.Tex.1975). The "principal stated purpose" of such a hearing, we said in *Clear*, is "to review and set bonds and appoint attorneys in felony case complaints." 573 S.W.2d at 226. See also *Sanders v. City of Houston*, 543 F.Supp. 694 (S.D.Tex.1982), aff'd 741 F.2d 1379 (C.A.5 1984) (Fourth Amendment requires after warrantless arrest that accused be presented before a magistrate no later than 24 hours after initial detention for probable cause determination and setting of bail). It is odd, then, that the record does not affirmatively reflect that bail was set at the PIA, either on March 4 or on the reset on March 5.

In his brief in the court of appeals appellant relied heavily upon *Alberti v. Sheriff of Harris County*, supra, for the proposition he was entitled to counsel at the PIA. *Alberti* was a civil case, however, testing the constitutionality of jail conditions in Harris County. The federal district court, *inter alia*, ordered the "Forty Eight Hour

"case" was then reset, again, according to the docket sheet, for the next day, March 5, 1990. On that date appellant filed a pauper's oath and counsel was appointed to represent him. Appellant was indicted on March 23, 1990, and on June 29, 1990, he was re-indicted. On July 2, 1990, appellant was convicted under the second indictment, and the original indictment was dismissed.

Appellant contended in the court of appeals that his right to counsel under both the Sixth Amendment and Article I, § 10 of the Texas Constitution was violated because he was not represented by counsel at the PIA. The court of appeals agreed that appellant had a right to counsel, citing *Nehman v. State*, 721 S.W.2d 319 (Tex.Cr.App.1986) for that proposition. But *Nehman* does not purport to address the right to counsel under Article I, § 10—in fact, the holding in *Nehman* is expressly limited to the Sixth Amendment. See 721 S.W.2d at 320. Therefore, the court of appeals did not resolve the issue as to appellant's right to counsel under Article I, § 10. Appellant does not specifically complain of this defect, however, in his petition for discretionary review. We limit our consideration, accordingly, to the Sixth Amendment issue that was addressed in the court of appeals.

Having held that appellant did indeed enjoy a Sixth Amendment right to counsel at his PIA, the court of appeals reasoned that he was not denied that right because he never requested the appointment of counsel for purposes of representation at that hearing, under the terms of Article 1.051(c), supra. That provision mandates that "the court" "appoint counsel to represent the defendant as soon as possible[,]" "[i]f" he is "indigent ... and requests appointed counsel[.]" Now in his petition for discretionary review appellant argues that the court of appeals erred thus to hold that his right to counsel was contingent upon request. The State counters in its cross-petition that the court of appeals erred to hold appellant had a right to counsel at the PIA in the first instance. The State's argument is two-fold. First, no right to counsel inheres at the PIA because it precedes the commencement of judicial adversarial proceedings. Second, even if judicial adversarial proceedings had commenced at the time of the PIA, that proceeding does not represent a "critical stage" of the prosecution so as to invoke the Sixth Amendment right to counsel.

## II.

■ In *Oliver v. State*, 872 S.W.2d 713 (Tex.Cr.App., delivered this day), we decided that failure to request counsel at a preindictment hearing under Article 1.051(c), supra, does not effect a waiver or forfeiture of the Sixth Amendment right to counsel, if any. Accordingly, we hold that the court of appeals erred to conclude that appellant lost any Sixth Amendment right to counsel at his PIA. However, in light of the issues raised in the State's cross-petition, this holding does not end matters here. We proceed, then, to address those issues.

## III.

### A.

■ The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This right does not attach, however, prior to "the initiation of adversary judicial proceedings[,]" *United States v. Gouveia*, 467 U.S. 180, at 187, 104 S.Ct. 2292, at 2297, 81 L.Ed.2d 146, at 153 (1984), "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, at 689, 92 S.Ct. 1877, at 1882, 32 L.Ed.2d 411 at 417 (1972) (Plurality opinion); see also *Moore v. Illinois*, 434 U.S. 220, at 228, 98 S.Ct. 458, at 464, 54 L.Ed.2d 424, at 433 (1977). The State argues that none of these events had occurred by the time of the PIA.

Hearing," to be conducted in the presence of counsel, as a means of assuring quick release of those jail inmates eligible for personal bond, to help reduce overcrowding. However, *Alberti* did not purport to require counsel under the Sixth Amendment, and to that extent it is inapposite to the present inquiry. *Sanders* is a Fourth Amendment case, and does not speak to the question of right to counsel.

■ Our caselaw is somewhat indeterminate on the question of what events may serve to initiate adversary judicial proceedings for Sixth Amendment purposes. The State urges us to hold that in a felony prosecution adversary judicial proceedings do not commence until the filing of an indictment. There are indeed opinions from this Court that seem to support this proposition. In *DeBlanc v. State*, 799 S.W.2d 701, at 706 (Tex.Cr.App.1990), we "summarily" dismissed a Sixth Amendment claim of right to counsel "since [DeBlanc's] right to an attorney under that Amendment did not arise until after he was indicted." Cf. *Spence v. State*, 795 S.W.2d 743, at 752–53 (Tex.Cr. App.1990) (no Sixth Amendment right to counsel at taking of dental impressions because Spence "was not then formally charged or indicted"); *Holloway v. State*, 780 S.W.2d 787, at 791, n. 3 (Tex.Cr.App.1989) ("return of an indictment signals" initiation of adversary judicial proceedings); *McCambridge v. State*, 712 S.W.2d 499, at 502 (Tex.Cr.App. 1986) (in misdemeanor case, defendant's "Sixth Amendment right to counsel did not attach until the complaint and information were filed."). On the other hand, though we have made it clear that an arrest alone does not trigger adversarial judicial proceedings, with or without a warrant, *Dunn v. State*, 696 S.W.2d 561 (Tex.Cr.App.1985); *Garcia v. State*, 626 S.W.2d 46, at 53 (Tex.Cr.App. 1981); see also *McGee v. Estelle*, 625 F.2d 1206 (C.A.5 1980), nor does an Article 15.17 warning, *Wyatt v. State*, 566 S.W.2d 597, at 600 (Tex.Cr.App.1978), a two judge panel opinion has held that the filing of a felony complaint does. *Barnhill v. State*, 657 S.W.2d 131, at 132 (Tex.Cr.App.1983). Cf. *Nehman v. State*, supra, at 322 & 323, n. 2 (adversarial judicial proceedings had begun by the time of Article 15.17 warnings because by then unspecified "charges" had been filed against defendant); *Miffleton v. State*, 777

S.W.2d 76, at 78 (Tex.Cr.App.1989) (adversary judicial proceedings commence in misdemeanor prosecution when "the complaint is filed."); *Forte v. State*, 707 S.W.2d 89, at 92 (Tex.Cr.App.1986) (same). This latter view is at least consistent with, if not dictated by, precedent from the United States Supreme Court. See *Moore v. Illinois*, supra; *Brewer v. Williams*, 430 U.S. 387, at 399, 97 S.Ct. 1232, at 1239–40, 51 L.Ed.2d 424, at 436 (1977); *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

We need not here decide when adversary judicial proceedings commence. For even if the felony complaint was sufficient to mark the initiation of adversary judicial proceedings, we agree with the State that nothing occurred at appellant's PIA that would render it a "critical stage" of the prosecution against him. The court of appeals erred to hold he had any Sixth Amendment right to waive.

### B.

■ Not every event following the inception of adversary judicial proceedings constitutes a "critical stage" so as to invoke the right to counsel under the Sixth Amendment.[4] E.g., *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) (post-indictment photographic display used to test witness identification prior to trial is not a "critical stage"). In assessing whether a particular stage of the pre-trial proceedings is a "critical" one, "the test utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." *Id.*, U.S. at 313, S.Ct. at 2575, L.Ed.2d at 628. In essence, we must scrutinize any pre-trial event with a view to ascertaining whether presence of counsel is necessary to assure fairness and the effective assistance of counsel at trial, which is, after all, "the core

4. For purposes of Article I, § 10 of the Texas Constitution, this Court held in *Forte v. State*, 759 S.W.2d 128 (Tex.Cr.App.1988), that the right to counsel would inhere at any "critical stage," irrespective of whether adversary judicial proceedings had begun. Later the Court retreated somewhat from this position, declaring in *McCambridge v. State*, 778 S.W.2d 70, at 76 (Tex. Cr.App.1989), again for purposes of Article I, § 10 only, that no "critical stage" can occur "until formal charges are brought against a suspect." We do not today decide the question of right to counsel at a PIA under Article I, § 10. See p. 719, *ante*. In the Sixth Amendment context it is clear enough that even after the initiation of adversary judicial proceedings the right to counsel attaches only at a "critical stage." *Forte v. State*, 707 S.W.2d at 92.

purpose of the counsel guarantee ..., when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." *Id.*, U.S. at 309, S.Ct. at 2573, L.Ed.2d at 626. See also *United States v. Wade*, 388 U.S. 218, at 227, 87 S.Ct. 1926, at 1932, 18 L.Ed.2d 1149, at 1157 (1967).

We cannot say that anything that occurred at appellant's PIA required the aid of counsel to cope with any legal problem or assist in meeting the prosecutorial adversary. All that the record reveals for certain is that appellant was warned in accordance with Article 15.17(a), supra, and that a probable cause determination was made, presumably to satisfy the Fourth Amendment. As to the former, we can hardly imagine a reason to require counsel to be present for the mere dispensation of warnings of the rights of the accused pursuant to *Miranda*[5] and Article 38.22, V.A.C.C.P. The warnings themselves serve as a prophylaxis, to make sure at a stage of the proceedings at which the accused is not yet likely to have an attorney present that he is nevertheless informed of his Fifth Amendment rights to remain silent and to obtain the presence of a lawyer as a condition of any submission to questioning by authorities. It would be odd indeed to require the presence of counsel at this event. Article 15.17 also requires that the accused be informed of the accusation against him. But appellant was neither required under the statute, nor was he apparently asked, to enter a plea of any kind. In this respect the PIA is unlike the preliminary hearing deemed to be a critical stage in *White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), where the defendant was informed of the charges against him and required to enter a plea. Compare *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). With regard to the preservation of fairness and the assurance of effective assistance of counsel at trial, appellant stood to gain nothing by the presence of, and risked losing nothing in the absence of, an attorney at his side during the Article 15.17 warnings.

■ Because appellant was arrested without a warrant, it was necessary under the Fourth Amendment for the State promptly to obtain a probable cause determination "as a condition of any significant pretrial restraint of his liberty." *Gerstein v. Pugh*, 420 U.S. 103, at 125, 95 S.Ct. 854, at 868–69, 43 L.Ed.2d 54, at 71–72 (1974). We are not apprised of the exact nature of the probable cause determination made at appellant's PIA, but we presume it was to serve this Fourth Amendment purpose. The probable cause finding contemplated by *Gerstein v. Pugh* is usually non-adversarial, and therefore not ordinarily considered to be a critical stage. *Id.*, U.S. at 122–23, S.Ct. at 867–68, L.Ed.2d at 70. It is true that an examining trial in Texas serves ·as an adversarial proceeding designed to inquire into the probable cause of the State to justify detention of an accused pending formal prosecution, and state law permits the examining magistrate to appoint counsel for the indigent accused. See Article 1.051(c), supra, and Articles 16.01, 16.06 & 16.17, V.A.C.C.P. Moreover, an examining trial in large measure affords an accused the opportunity to discover the State's case against him. Given its adversarial character, and the potential it presents for the preparation of a trial defense, an examining trial is arguably a critical stage for purposes of Sixth Amendment analysis. See *Coleman v. Alabama*, 399 U.S. 1, at 9, 90 S.Ct. 1999, at 2003, 26 L.Ed.2d 387, at 397 (1970); *Gerstein v. Pugh*, U.S. at 122–23, S.Ct. at 867–68, 43 L.Ed.2d at 70–71. In fact, the Supreme Court barely avoided deciding whether an examining trial is a critical stage in *Pointer v. Texas*, 380 U.S. 400, at 379–380, 85 S.Ct. 1065, at 1067, 13 L.Ed.2d 923, at 925–26 (1965).

But appellant does not claim that an examining trial was conducted at his PIA. Nor does he claim that the magistrate should have held an examining trial at that time. He does not even claim that the probable cause determination the magistrate made at the PIA would somehow preclude a later examining trial. In short, appellant does not now complain of having been deprived of any advantage a full-blown examining trial would have afforded. Indeed, counsel appointed for appellant the day after the PIA could easily

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

have requested an examining trial, but did not. Absent a claim that the PIA was, or should have been, an examining trial, for all we can tell the probable cause determination that was made there was nothing more than the type of non-adversarial proceeding held not to constitute a critical stage in *Gerstein v. Pugh*, supra.

Finally, the record does not establish that bail was set at the PIA. Nevertheless, appellant argues that had counsel been appointed prior to the PIA, he could have contested the bail that had (apparently) been set previously. See nn. 1 & 3, *ante*. Undoubtedly this is true, but it does not convert the PIA into a critical stage. Other than its Article 15.17 aspect, the PIA, *per se*, is not a requirement of state law. While excessive bail violates Article I, § 13 of the Texas Constitution, the traditional method of attacking excessive bail is by application for writ of habeas corpus. See 1 Braden, et al, The Constitution of the State of Texas: An Annotated and Comparative Analysis, (1977), at 46. Appellant does not claim he was deprived of counsel to represent him in any habeas corpus action to contest his bail. Indeed, counsel was appointed for him the day after the PIA; yet the record does not reflect appellant ever sought a reduction of bail by this usual procedure. In any event, appellant does not demonstrate that a failure to reduce his bail somehow impacted the fairness of, or counsel's ability effectively to represent him at, his trial. See *United States v. Ash*, supra; *United States v. Wade*, supra. Under the circumstances, the possibility that a lawyer might have contested bail at the PIA

does not elevate that proceeding to the level of a critical stage.

We hold that nothing the record shows to have occurred at appellant's PIA amounted to a critical stage invoking his Sixth Amendment right to counsel. Thus, though the court of appeals erroneously held appellant waived any right to counsel under the Sixth Amendment, it also erred to hold he had such a right to begin with. Accordingly, we affirm its judgment.

MILLER, J., concurs in the result.

MALONEY, J., dissents with note: Because I believe that the PIA hearing is a critical stage of the proceeding entitling the appellant to counsel under the Sixth and Fourteenth Amendments, *compare Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) *and* TEX.CODE CRIM.PROC. ANN. art. 15.17, I respectfully dissent.

CLINTON, Judge, concurring.

Like Judge Meyers, I join the opinion of the Court. I add these remarks in response to his concurring opinion, in which he advocates we hold appellant had no right to counsel at his "preliminary initial appearance" because by that time adversarial judicial proceedings had not begun.

The Sixth Amendment to the Constitution of the United States and Article I, § 10, of the Constitution of the State of Texas, guarantee that "[i]n all *criminal prosecutions*" the accused shall have "the Assistance of Counsel for his defence," and "the right of being heard by himself or counsel, or both[,]" respectively.[1]

---

1. In Texas the traditional conceptual scope of a "criminal prosecution," once memorialized in statutes, is "the whole or *any part of the procedure which the law provides for bringing offenders to justice;*" the terms "criminal action" and "criminal accusation" are used in the same sense. See *State v. Eaves*, 800 S.W.2d 220, at 223, n. 11 (Tex.Cr.App.1990), and authorities cited therein. That issuing a warrant for arrest based upon a complaint pursuant to Articles 15.01, 15.03, 15.04 and 15.05, V.A.C.C.P., and thereafter carrying out duties imposed by Article 15.17, V.A.C.C.P., including informing accused of right to counsel and to an examining trial, are part of such procedure for "bringing offenders to justice" is self-evident. See *Nehman v. State*, 721 S.W.2d 319, 322 (Tex.Cr.App.1986).

While lacking a similar definition, the Federal Rules of Criminal Procedure to "govern the procedure in all criminal proceedings [in federal courts]," *id.*, Rule 1, are intended to "provide for the just determination of every criminal proceeding," *id.*, Rule 2. The first procedure prescribed for "bringing offenders to justice" is to swear out a complaint upon which an arrest warrant or summons may issue "if there is probable cause to believe that an offense has been committed and that defendant has committed it[,]" *id.*, Rules 3 and 4, followed by arrest of the accused. The second is an initial appearance before the magistrate during which the duties vary according to classification of the offense, but in any event implicate the right to counsel; the third procedure is a preliminary examination, unless

On the question of when the right to counsel must be honored in the course of a "criminal prosecution," the prevailing federal view is derived from the principle laid down in *Powell v. Alabama,* 287 U.S. 45, at 69, 53 S.Ct. 55, at 64, 77 L.Ed. 158, at 170 (1932), that one accused of crime "requires the guiding hand of counsel at every step in the proceedings against him." [2] Thus the right "attaches" when accusatory proceedings are initiated against him—indiscriminately described as "adversary judicial proceedings" and "judicial criminal proceedings," *Kirby v. Illinois,* 406 U.S. 682, at 688, 92 S.Ct. 1877, at 1882, 1883, 32 L.Ed.2d 411, at 417 (1972) (but right to counsel under *Wade* and *Gilbert* inapplicable to preindictment or pre-charge show-up); "judicial proceedings" and "adversary proceedings," *Brewer v. Williams,* 430 U.S. 387, at 399, 401, 97 S.Ct. 1232, at 1239, 1240, 51 L.Ed.2d 424, at 436, 438 (1977) (initiated in one place by arrest on warrant, booking and "arraignment" thereon before a judge who advised him of *Miranda* rights and committed to jail to await transfer to another place); [3] "adversary judicial criminal proceedings," *Moore v. Illinois,* 434 U.S. 220, at 228, 98 S.Ct. 458, at 464–465, 54 L.Ed.2d 424, at 433 (1977) (rejecting view that corporeal identification conducted without counsel excludable only if made after indictment, because "prosecution" commenced with filing of complaint followed by "preliminary hearing [to] determine ... probable cause to bind [accused] over to grand jury and to set bail").[4]

waived. Rule 5(b) and (c); Rule 5.1 and Rule 58.

Thereafter, in each jurisdiction during the conduct of "criminal prosecutions" there are, of course, other pretrial procedures required or available; though called by similar names, the purpose and function of which are not necessarily the same.

All emphasis is mine throughout unless otherwise indicated.

2. Rejecting any notion that the constitutional principle is limited to presence of counsel at trial, the Supreme Court has explained:

"... 'It is central to that principle that in addition to counsel's presence of trial, the accused is guaranteed that he need not stand alone against the State at *any stage of the prosecution, formal or informal, in court or out,* where counsel's absence might derogate from the accused's right to a fair trial.' *United States v. Wade, supra,* 388 U.S. at 226, 87 S.Ct. at 1932."

*Coleman v. Alabama,* 399 U.S. 1, at 9, 90 S.Ct. 1999, at 2003, 26 L.Ed.2d 387, at 396 (1970).

3. An "arraignment" in one jurisdiction, there Iowa, may not be the same type of "proceeding" in another, for example, in Alabama. See *Hamilton v. Alabama,* 368 U.S. 52, 54, at n. 4, 82 S.Ct. 157, 159, at n. 4, 7 L.Ed.2d 114, at 116, n. 4 (1961) (arraignment has different consequences in various jurisdictions); see also Fed. Rule Crim.Pro. 10 and 11.

Accordingly, one must examine the cases with some care before likening another to our own particularly focussed pretrial "arraignment" required by Article 26.01 and prescribed in Articles 26.02, V.A.C.C.P. But compare "Forty Eight Hour Hearing" formerly prescribed in Harris County, described in *Ex parte Clear,* 573 S.W.2d 224, at 226–227 (Tex.Cr.App.1978), with an Article 15.17 proceeding before a magistrate—elsewhere sometimes called an "arraignment," e.g.,

*Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (*passim*).

4. More particularly, for near unanimous Supreme Court (two justices concurring with opinions), Justice Powell wrote:

"The Court of Appeals ... read *Kirby* as holding that evidence of corporeal identification conducted in the absence of defense counsel must be excluded only if the identification is made after the defendant is *indicted.* [emphasis in original; record cites omitted]. Such a reading cannot be squared with *Kirby* itself, which held that an accused's rights under *Wade* and *Gilbert* attach to identifications conducted 'at or after the initiation of adversary judicial criminal proceedings,' including proceedings instituted 'by way of formal charges [or] preliminary hearing.' [citations omitted]. The prosecution in this case was commenced under Illinois law when the victims' complaint was filed in court. [citation omitted]. The purpose of the preliminary hearing was to determine whether there was probable cause to bind petitioner over to the grand jury and to set bail. Petitioner had the right to oppose the prosecution at that hearing by moving to dismiss the charges and to suppress the evidence against him. [citation omitted]. He faced counsel for the State, who elicited the victim's identification, summarized the State's other evidence against petitioner, and urged that the State be given more time to marshal its evidence. It is plain that 'the government ha[d] committed itself to prosecute,' and that petitioner found 'himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.' *Kirby,* supra, 406 U.S. at 689, 92 S.Ct., at 1882. The State candidly concedes that this preliminary hearing marked the 'initiation of adversary judicial criminal proceedings' against petitioner [record references

As the Supreme Court recognized in *Kirby v. Illinois*, supra:

"... But the point is that, while members of the Court have differed as to the existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of *formal charge, preliminary hearing, indictment, information,* or *arraignment.*"

*Id.,* 406 U.S. at 689, 92 S.Ct., at 1882, 32 L.Ed.2d, at 417 (first emphasis in original). Later in *Brewer v. Williams,* supra, the Su-

---

omitted], and it could hardly contend otherwise. The Court of Appeals therefore erred in holding that petitioner's rights under *Wade* and *Gilbert* had not yet attached at the time of the preliminary hearing."
*Id.,* 434 U.S. at 228–229, 98 S.Ct., at 464–465, 54 L.Ed.2d, at 433–434.

5. "There can be no doubt in the present case that judicial proceedings had been initiated against Williams ... A warrant had been issued for his arrest, he had been *arraigned on that warrant before a judge* ..., and he had been committed by the judge to confinement in jail."
*Id.,* 430 U.S. at 399, 97 S.Ct., at 1239–1240, 51 L.Ed.2d, at 436.

In *United States v. Goveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), the Supreme Court noted that subsequent cases had confirmed the view that the right to counsel attaches with "initiation of adversary proceedings," citing, e.g., *Moore v. Illinois,* supra, 434 U.S. at 226–227, 98 S.Ct., at 463–464, 54 L.Ed.2d, at 432–434 and *Brewer v. Williams,* supra, 430 U.S. at 398–399, 97 S.Ct., at 1239–1240, 51 L.Ed.2d at 435–437.

6. The opinion of the Supreme Court actually decides two causes ultimately consolidated for purposes of appeal by the Supreme Court of Michigan: *People v. Bladel* and *People v. Jackson,* 421 Mich. 39, 365 N.W.2d 56 (1984).

The respective homicide offenses are not related, but each cause presents a common question, to-wit:

"Whether the rule of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) 'applies to a defendant who has been *formally charged with a crime* and who has requested appointment of counsel *at his arraignment.'* "

The court below held that *postarraignment* confessions were improperly obtained in violation of the Sixth Amendment because both Bladel and Jackson "requested counsel *during their arraignments,* but were not afforded an opportunity to consult with counsel before the police initiated further interrogations." *Michigan v. Jackson,* supra, at 626, S.Ct., at 1406, L.Ed.2d, at 636, quoting from 421 Mich., at 67–68, 365 N.W.2d,

---

preme Court added: or *arrest on warrant and arraignment thereon.*[5]  *Accord: Michigan v. Jackson,* 475 U.S. 625, at 629, 106 S.Ct. 1404, at 1407, 89 L.Ed.2d 631, at 638 (1985) (magisterial arraignment signals initiation of adversary judicial proceedings and thus attachment of Sixth Amendment right to counsel).[6]

Thus, all things considered, resolution of the issue in the instant cause does not turn on whether "the State has filed the kind of accusatory pleading upon which a conviction might lawfully be based[,]" as Judge Meyers would have it. See page 721. Although it is

---

at 69. The Supreme Court agreed with that holding. *Ibid.*

In Jackson's case, the Michigan Supreme Court points out that since he was arrested for a felony without a warrant, the arresting officers were required by a Michigan statute "to bring him before a magistrate for *arraignment* without unnecessary delay." 365 N.W.2d at 70. Bladel was first arrested, questioned and released without being charged; when investigating officers later obtained evidence tending to incriminate him, the officers caused him to be arrested in another state, and upon his waiving extradition and being brought back and questioned, Bladel was arraigned before a magistrate, during which he requested appointment of counsel.

In those contexts, the Supreme Court justified its application of *Edwards v. Arizona* to the Sixth Amendment right to counsel—"at least after the initiation of *formal charges,*" viz:

"Indeed, after a *formal accusation* has been made—and a person who had previously been just a *'suspect'* has become an *'accused'* within the meaning of the Sixth Amendment—the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation."
*Id.,* 475 U.S. at 632, 106 S.Ct., at 1409, 89 L.Ed.2d, at 639. And after rejecting more opposing arguments on the subject, the Supreme Court concluded and held:

"... We conclude that the assertion [of right to counsel] is no less significant, and the need for additional safeguards is no less clear, when the request for counsel is made at an *arraignment* and when the basis for the claim is the Sixth Amendment. We thus hold that, if police initiate interrogation after a defendant's assertion, at *an arraignment or similar proceeding,* of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."
*Id.,* 475 U.S. at 636, 106 S.Ct., at 1411, 89 L.Ed.2d, at 642.

clear enough that the Supreme Court regards as a "formal charge" a sworn complaint under its rules and would under our own rules, see note 1, *ante*, that term is not a talisman for invoking constitutional rights.

For Sixth Amendment purposes the Supreme Court has made clear that an arrest with a warrant (*Brewer v. Williams*) or without a warrant (*Michigan v. Jackson*) followed by an arraignment thereon initiates "adversary judicial criminal proceedings." But that question is "distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel, absent a valid waiver." *Michigan v. Jackson*, supra, 475 U.S. at 629, n. 3, 106 S.Ct., at 1407, n. 3, 89 L.Ed.2d, at 638, n. 3.[7] After a magisterial arraignment "government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies. [citations omitted]." *Id.*, 475 U.S. at 630, 106 S.Ct., at 1408, 89 L.Ed.2d, at 638.

Because I agree the PIA did not constitute a critical stage in the circumstances presented here, I join the per curiam majority opinion in this cause. Unlike Judge Meyers, however, I believe the majority does well to eschew any holding that the Sixth Amendment right to counsel does not inhere at a PIA because judicial adversarial proceedings have not yet begun as of that time.

BAIRD, Judge, concurring.

I believe the Court is correct in adopting the "critical stage" analysis for determining when an accused is entitled to counsel under the Sixth Amendment. However, I would further hold that the Preliminary Initial Appearance (PIA) hearing under Tex.Code Crim.Proc.Ann. art. 15.17 constitutes a "critical stage" at which the Sixth Amendment right to counsel has attached.

## I.

The Supreme Court has held that the right to counsel under the Sixth Amendment at-

taches at or after the initiation of adversary judicial proceedings against the defendant. *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984); *Estelle v. Smith*, 451 U.S. 454, 469–470, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981); *Kirby v. Illinois*, 406 U.S. 682, 688–689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). And the Court has acknowledged that certain pretrial "critical stages" may constitute such adversary judicial proceedings sufficient to trigger a defendant's right to counsel. *See, Gouveia*, 467 U.S. at 189, 104 S.Ct. at 2298 (citing *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). *See also, Coleman v. Alabama*, 399 U.S. 1, 7, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387 (1970). Whether a pre-trial proceeding constitutes an adversary judicial proceeding essentially depends upon "[whether] the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." *Gouveia*, 467 U.S. at 188–189, 104 S.Ct. at 2298 (quoting *United States v. Ash*, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973)). However, the Supreme Court has declined to establish a "bright-line" rule for when adversary judicial proceedings begin and has instead left this decision to state courts. *See, Gouveia*, 467 U.S. at 187–189, 104 S.Ct. at 2297–2298. *See also, Moore v. Illinois*, 434 U.S. 220, 228, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977), *Fuller v. State*, 829 S.W.2d 191, 205 (Tex.Cr.App.1992); *and, State v. Barnhill*, 657 S.W.2d 131, 132 (Tex.Cr.App.1983). Consequently, it is incumbent upon this Court to determine what point in the proceedings constitutes a "critical stage."

## II.

Tex.Code Crim.Proc.Ann. art. 15.17 clearly provides for the right to counsel at a defendant's PIA hearing. Art. 15.17(a) reads, in pertinent part:

> *Michigan v. Jackson*, supra, 475 U.S. at 632, n. 5, 106 S.Ct., at 1409, n. 5, 89 L.Ed.2d, at 640, n. 5. Furthermore, the right to counsel at a "critical stage" does not depend on a request by the defendant. *Id.*, at n. 6.

---

**7.** "[A]fter the initiation of adversary judicial proceedings, the Sixth Amendment provides a right to counsel at a 'critical stage' even where there is no interrogation and no Fifth Amendment applicability. See *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)...."

In each case enumerated in this Code, the person making the arrest shall without unnecessary delay take the person arrested or have him taken before some magistrate of the county where the accused was arrested ... The magistrate shall inform in clear language the person arrested ... of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, of his right to request the appointment of counsel if he is indigent and cannot afford counsel, and of his right to have an examining trial. He shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. *The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel*[1] and shall admit the person arrested to bail if allowed by law.[2]

Art. 15.17 implicates both the Fifth and Sixth Amendments by requiring a magistrate to inform a defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *and* allowing the defendant the opportunity to consult with counsel. Because a defendant's *Miranda* rights stem from the Fifth Amendment's prohibition against self-incrimination during custodial interrogation, *see*, *Gouveia*, 467 U.S. 188 n. 5, 104 S.Ct. 2297 n. 5; *and Kirby*, 406 U.S. at 688, 92 S.Ct. at 1881, it follows that a defendant's right "to consult counsel" arises independently from the Fifth Amendment. Thus, as the Court of Appeals observed:

... The PIA hearing is merely a procedural bridge that spans the gulf between the right of a defendant to assistance of counsel and the actual appointment of counsel to represent the defendant. Though the hearing takes place *after a defendant's right to counsel has attached*, the hearing

serves the purpose of giving practical effect to an abstract protection....

*Oliver v. State*, 813 S.W.2d 762, 764–765 (Tex.App.—Houston [1st Dist.] 1991), rev'd on other grounds, 872 S.W.2d 713 (Tex.Cr. App. delivered this day).

As the majority recognizes, our decisions on when adversary judicial proceedings begin have been inconsistent. Majority opinion, pp. 719–720. However, we acknowledged in *Fuller v. State*, 829 S.W.2d 191 (Tex.Cr.App. 1992), that the PIA hearing may constitute just such a "critical stage" at which point a defendant's right to counsel has attached. In *Fuller*, we recited when an adversary judicial proceeding begins:

... In Texas, a criminal prosecution is variously considered to be in progress *after the accused has been formally arrested and taken before a magistrate*, or when he has been indicted or charged by complaint and information with a criminal offense.

*Id.*, 829 S.W.2d at 205. Consequently, we are not without a basis to conclude a PIA hearing is a sufficiently "critical stage" to constitute an adversary judicial proceeding, at which point the defendant is entitled to the assistance of counsel. *See also, Lucas v. State*, 791 S.W.2d 35, 45 (Tex.Cr.App.1989); *Janecka v. State*, 739 S.W.2d 813, 827 (Tex. Cr.App.1987); *Nehman v. State*, 721 S.W.2d 319 (Tex.Cr.App.1986); *and, Barnhill v. State*, 657 S.W.2d 131, 132 (Tex.Cr.App.1983) (panel op.). This is especially true where, as in the instant case, the PIA hearing is held after a formal complaint is filed.[3] *See, United States v. Wade*, 388 U.S. at 226, 87 S.Ct. at 1932 ("critical stage" normally occurs after a criminal complaint is filed); *and, Barnhill*, 657 S.W.2d at 132.

### III.

The Court of Appeals relied upon *Nehman v. State*, 721 S.W.2d 319 (Tex.Cr.App.1986), to hold appellant was entitled to counsel at the PIA hearing. I believe that holding was correct. In *Nehman*, the defendant was ar-

---

1. All emphasis is supplied unless otherwise indicated.

2. A PIA hearing pursuant to art. 15.17 is distinct from an examining trial under art. 16.01.

3. The complaint in the instant case was filed March 3, 1990, the PIA hearing was held on March 4, and counsel was appointed to represent appellant on March 5.

rested in Iowa as a suspect in a homicide in Amarillo, Texas. An arrest warrant was issued in Amarillo and two police officers travelled to Iowa to escort Nehman to Texas. Upon taking him into custody, the officers informed Nehman of his *Miranda* rights. *Id.* at 320. After returning to Amarillo, Nehman indicated that he wished to give a written statement concerning the homicide. *Id.*, at 320–321. As the statement was being prepared, Nehman was taken for his PIA hearing, pursuant to art. 15.17, where the magistrate informed Nehman of his *Miranda* rights and of his right to have an attorney appointed to represent him. At the PIA hearing, Nehman requested that counsel be appointed. *Id.*, at 321. After the hearing, but prior to receiving counsel, Nehman was returned to the police department where he signed his statement. *Id.*

On appeal, Nehman claimed the statement was obtained in violation of the Fifth and Sixth Amendments. We declined to address the Fifth Amendment claim and focused instead on Nehman's Sixth Amendment claim, holding: "There is no question that adversarial proceedings had been initiated, and thus, that appellant's Sixth Amendment right to counsel had attached." *Id.*, at 322. We held Nehman's statement was obtained in violation of the Sixth Amendment. *Id.*, at 323. Therefore, *Nehman* clearly stands for the proposition that a PIA hearing is a "critical stage" at which point a defendant's right to counsel under the Sixth Amendment has attached.

In holding that the Court of Appeals erred in concluding appellant's PIA hearing was a "critical stage," the majority entirely disregards *Nehman*. As stated above, I believe the Court of Appeals correctly relied on *Nehman*. In the instant case, as in *Nehman*, appellant's PIA hearing was conducted after the complaint was filed but before indictment. *See, Nehman*, 721 S.W.2d at 323 n. 2. Insofar as the majority fails to distinguish or overrule *Nehman*, I believe that *Nehman* is controlling. Moreover, at least three courts of appeals have relied upon *Nehman* to hold that a defendant's PIA hearing constitutes a

"critical stage" of the proceedings against the defendant. *See, State v. Hernandez*, 842 S.W.2d 306, 311 (Tex.App.—San Antonio 1992, pet. ref'd); *Alford v. State*, 788 S.W.2d 436, 439 (Tex.App.—Houston [1st Dist.] 1990); *and, Higginbotham v. State*, 769 S.W.2d 265, 268 (Tex.App.—Houston [14th Dist.] 1989), rev'd on other grounds, 807 S.W.2d 732 (Tex.Cr.App.1991). Therefore, I would hold that a PIA hearing under art. 15.17 represents a "critical stage" at which point a defendant's right to the assistance of counsel has attached.

IV.

In *Oliver v. State*, 872 S.W.2d 713 (Tex.Cr. App. delivered this day), we held that a defendant does not waive his right to counsel at a pre-indictment hearing merely by failing to affirmatively request counsel. *Id.*, 872 S.W.2d at 715 (citing *Swenson v. Bosler*, 386 U.S. 258, 260, 87 S.Ct. 996, 998, 18 L.Ed.2d 33 (1967); *and Ex parte Rains*, 555 S.W.2d 478, 482 (Tex.Cr.App.1977)). *See also, Barker v. Wingo*, 407 U.S. 514, 525, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972) (no presumption of waiver of constitutional right from inaction). Instead, for there to be a valid waiver of counsel, the record must show a defendant *affirmatively declined* counsel. *See, Oliver*, 872 S.W.2d at 715. *See also, Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). It follows then, in the instant case, that appellant did not waive his right to counsel simply by failing to request counsel at the PIA hearing.

Since appellant was entitled to counsel at the PIA hearing it is necessary to determine whether he was harmed by the failure to provide counsel. Violations of the Sixth Amendment are subject to a "harmless error" analysis. *Satterwhite v. Texas*, 486 U.S. 249, 257, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988); *and, Sterling v. State*, 830 S.W.2d 114, 121 (Tex.Cr.App.1992). In conducting such an analysis, we look to see whether the failure to provide appellant with counsel at his PIA hearing contributed to either his conviction or punishment. Tex. R.App.P. Rule 81(b)(2).[4] *Compare, Hernan-*

---

4. In *Mallory v. State*, 752 S.W.2d 566, 569–570 (Tex.Cr.App.1988), we recognized that Tex.

R.App.P. 81(b)(2) is essentially the codification of the federal "harmless error" standard.

*dez v. State*, 808 S.W.2d 536, 539 (Tex.App.—Waco 1991); *and, Whittington v. State*, 781 S.W.2d 338, 341 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). The record indicates that the magistrate made a probable cause determination at the PIA hearing. While it is possible that counsel could have persuaded the magistrate that probable cause was lacking, the grand jury's subsequent indictment of appellant would have preempted the magistrate's findings. *See, Whittington*, 781 S.W.2d at 341. Moreover, the record indicates appellant received counsel the day after the PIA hearing.[5] We find that appellant's failure to receive counsel at his PIA hearing did not contribute to either appellant's conviction or punishment. The error, therefore, was harmless.[6]

With these comments, I join only the judgment of the Court.

MEYERS, Judge, concurring.

I join the Court's opinion because I subscribe fully to its "critical stage" analysis and because I am willing to concede that the criticalness for Sixth Amendment purposes of a so-called "preliminary initial appearance" (PIA) is here contested by the State's petition for discretionary review. But it is not my impression, nor do the papers in this case fairly support a conclusion, that review was actually granted to decide whether the PIA was a "critical stage" of the proceedings against Appellant.

The Court of Appeals, relying only on *Nehman v. State*, 721 S.W.2d 319, 322 (Tex.Crim. App.1986), held simply that "Appellant was entitled to assistance of counsel at the PIA." *Green v. State*, No. 01–90–00662–CR, 1991 WL 189699 (Tex.App.—Houston [1st] Sept. 26, 1991) (unpublished), Slip Op. at 5. *Nehman*, in turn, stands only for the proposition

that "[t]here is no question that adversarial proceedings ha[ve] been initiated" for Sixth Amendment purposes by the time of an "Art. 15.17 warning hearing." 721 S.W.2d at 322 (internal quotation marks omitted). Thus, the opinion which we here review does not expressly or implicitly include a decision on the question of criticalness.

Moreover, the State mainly argues in its petition that the Court of Appeals position, and therefore also the holding in *Nehman*, is untenable because adversary judicial proceedings are not really initiated in felony cases until the Grand Jury returns an indictment. State's PDR at 5–7 (emphasis omitted). Although the State does "note[ ] that ... [a] probable cause determination is not a critical stage" under Supreme Court precedent, this is not really the crux of its argument. State's PDR at 5 (internal quotation marks omitted). It therefore seems clear to me that the question actually presented for review in this case is whether, under Texas law, the Houston PIA occurred after the inception of a formal criminal prosecution against Appellant. We need not decide whether the PIA was a so-called "critical stage" of the prosecution unless we first conclude that a prosecution had in fact begun. *McCambridge v. State*, 712 S.W.2d 499, 502 n. 11 (Tex.Crim.App.1986); *Forte v. State*, 707 S.W.2d 89, 92 (Tex.Crim.App.1986). I write separately to elaborate my own views on this question.

The Sixth Amendment to the United States Constitution broadly assures that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This right is applicable in state criminal prosecutions through the Due Process Clause of the Fourteenth Amendment, *Gideon v. Wainwright*,

---

5. *See*, n. 3, *supra.*

6. Appellant contends harm invariably results from the failure to appoint counsel at the PIA hearing because unrepresented indigent defendants "lose their time, jobs, housing ... [and] ... all those essentials that non-indigents with lawyers pursue as a matter of survival...." Appellant's Supplemental Brief and Response, pg. 33.

Initially, I note that the record does not indicate that appellant suffered these grievances.

However, even if the record supported appellant's claims, the harm of which appellant complains is *not* the type of "harm" contemplated by the "harmless error" rule. The loss of one's employment, etc, while most unfortunate, makes *no contribution to a defendant's conviction or punishment. See*, Rule 81(b)(2). Consequently, the failure to appoint counsel in the instant case was harmless in a Rule 81(B)(2) context because the error made no contribution either to appellant's conviction or punishment.

372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), but is effective "only at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984). Whether adversary judicial proceedings have been instituted is, of course, a matter of state law. *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).

Unfortunately, our precedents do not clearly or unambiguously mark the inception of criminal proceedings in this State. We have usually insisted that the Sixth Amendment right to counsel be effectuated only after the filing of an indictment or of a formal complaint and information. *DeBlanc v. State,* 799 S.W.2d 701, 706 (Tex.Crim.App. 1990); *Spence v. State,* 795 S.W.2d 743, 752 (Tex.Crim.App.1990); *Miffleton v. State,* 777 S.W.2d 76, 78 (Tex.Crim.App.1989); *McCambridge,* 712 S.W.2d at 502; *Forte,* 707 S.W.2d at 91–92. But we have not consistently held that formal criminal prosecution must necessarily begin in this way. Indeed, we have even held that execution of an arrest warrant may be a sufficiently formal accusation under Texas law to trigger the application of Sixth Amendment protections. Thus, in *Nehman,* upon which the Court of Appeals expressly relied in this case, the accused was arrested in Iowa on a murder warrant issued from Potter County, Texas, and then returned to Amarillo for prosecution. Investigating officers obtained a written confession from him, which was completed after he had been taken before a magistrate, warned in the manner required by article 15.17 of the Code of Criminal Procedure, and furnished with ap-

pointed counsel. Without citation of authority or further discussion of the issue, we concluded that, "since charges were filed against appellant ... by the time of [his] Art. 15.17 warning hearing[,]" *Id.* at 323 n. 2 (internal quotation marks omitted), "adversarial proceedings had been initiated, and ... appellant's Sixth Amendment right to counsel had attached."[1] *Id.* at 322. Accordingly, it is fair to say that *Nehman* does stand for the proposition that arrest warrants constitute formal criminal charges for purposes of implementing the Sixth Amendment right to counsel in Texas. *See also Lucas v. State,* 791 S.W.2d 35, 45 (Tex.Crim. App.1989); *Janecka v. State,* 739 S.W.2d 813, 826 (Tex.Crim.App.1987); *Barnhill v. State,* 657 S.W.2d 131, 132 (Tex.Crim.App.1983) (panel opinion).

But our position in this matter is not well supported by federal Sixth Amendment jurisprudence, nor does it comport with the realities of criminal prosecution under Texas law. Although *Nehman*'s language is reminiscent of that used by the United States Supreme Court in *Brewer v. Williams,*[2] a case similar on its facts, the significant event in *Brewer* was not the warrant of arrest but the circumstance of a judicial arraignment on the warrant. To regard *Brewer* as authority for the proposition that Nehman was facing formal criminal charges would, therefore, require interpreting the procedure contemplated by article 15.17 as tantamount to an arraignment. *See Spence,* 795 S.W.2d at 752–53 ("statutory warnings are not 'formal charges'"). Clearly this was not our holding in *Nehman,* which declared that formal criminal charges were already pending "by the

---

1. Relying mainly on *Nehman,* we recently opined in *Fuller v. State* that an accused who had been arrested and charged by warrant with a criminal offense was "probably right to insist that an effective waiver of counsel under the Sixth Amendment was essential to the admissibility of his ensuing statements." 829 S.W.2d 191, 205 (Tex.Crim.App.1992). But we did not finally resolve the issue in that case. Instead, we found that, even assuming appellant was entitled to counsel under the Sixth Amendment, he had expressly waived that right, and that there was "an adequate basis in the record for a conclusion that his waiver was constitutionally acceptable, not only under the Fifth Amendment, but for Sixth Amendment purposes as well." *Id.* Hence, although *Fuller* does not purport to be

authoritative as to the kind of formal criminal charges which, for purposes of the Sixth Amendment, mark the inception of adversary judicial proceedings in Texas, the cases upon which it relied do.

2. "There can be no doubt in the present case that judicial proceedings had been initiated against Williams before the start of the automobile ride from Davenport to Des Moines. A warrant had been issued for his arrest, he had been arraigned on that warrant before a judge in the Davenport courtroom, and he had been committed by the court to confinement in jail." 430 U.S. 387, 399, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977).

time of [Nehman's] Art. 15.17 warning hearing."

In Texas, as elsewhere, the purpose of an arraignment is to identify the accused and hear his plea to the State's charging instrument. Tex.Code Crim.Proc.Ann. art. 26.02; *Hamilton v. Alabama,* 368 U.S. 52, 54 n. 4, 82 S.Ct. 157, 158 n. 4, 7 L.Ed.2d 114 (1961); 21 Am.Jur.2d *Criminal Law* §§ 433–442; 22 C.J.S. *Criminal Law* §§ 356–364. It is often the first adversarial confrontation between an accused and government prosecuting attorneys after the filing of formal criminal charges. Texas procedure requires there to be an arraignment "[i]n all felony cases, after indictment, and all misdemeanor cases punishable by imprisonment," Code Crim.Proc. art. 26.01, and provides that "[n]o arraignment shall take place until the expiration of at least two entire days after the day on which a copy of the indictment was served on the defendant, unless the right to such copy or to such delay be waived, or unless the defendant is on bail." Code Crim.Proc. art. 26.03. Nothing could be clearer than that an arraignment in all cases of felony cannot occur prior to the return of an indictment, both because the law expressly forbids it and because there is no formal charge upon which to plead under Texas law until an indictment or other satisfactory charging instrument has been returned.

In contrast, the procedure according to which the state of Texas provides for taking persons under arrest before an impartial magistrate at the earliest opportunity is plainly designed, not as a way of joining issue on criminal pleadings, but as a means of protecting essential rights of the suspect during the period following his arrest until the justice system decides whether to initiate a formal prosecution against him.[3] Code Crim. Proc. art. 15.17. The fact that a determination of probable cause is often made as a part of this procedure does not turn it into a criminal prosecution, any more than a determination of probable cause made by a justice of the peace issuing an arrest warrant in his living room or a grand jury investigation conducted in secret is a criminal prosecution. *See Gerstein v. Pugh,* 420 U.S. 103, 120, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975) ("[A]dversary safeguards are not essential for the probable cause determination required by the Fourth Amendment").

Our system contemplates a variety of instances in which public officials are obliged to decide whether there is reason to believe that some person has offended the penal laws of this state.[4] Sometimes people are de-

---

3. In other states, this procedure occasionally includes or is called an "arraignment." When it is, the United States Supreme Court sometimes conclusively considers it to mark the inception of adversary judicial proceedings because *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion) once speculated that judicial proceedings are often initiated by means of an "arraignment." *Michigan v. Jackson,* 475 U.S. 625, 629 n. 3, 106 S.Ct. 1404, 1406 n. 3, 89 L.Ed.2d 631 (1986); *Brewer,* 430 U.S. at 399, 97 S.Ct. at 1240. In Texas, however, appearance before a magistrate to receive statutory warnings after arrest is neither denominated nor does it serve the function of an arraignment, and it is not considered to mark the inception of formal adversary proceedings. *See Wyatt v. State,* 566 S.W.2d 597, 600 (Tex.Crim. App.1978) (panel opinion); *Tarpley v. Estelle,* 703 F.2d 157, 162 (5th Cir.1983) *cert. denied* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697; *McGee v. Estelle,* 625 F.2d 1206, 1209 (5th Cir.1980) *cert. denied* 449 U.S. 1089, 101 S.Ct. 883, 66 L.Ed.2d 817 (1981). *See also Garcia v. State,* 626 S.W.2d 46, 53 (Tex.Crim.App.1981); *Thomas v. State,* 605 S.W.2d 290, 292 (Tex.Crim.App.1980); *Lane v. State,* 506 S.W.2d 212, 213 (Tex.Crim.App. 1974).

4. Among these proceedings is the examining trial, originally considered mandatory in all cases of arrest, with or without warrant. Texas law makes this procedure distinctly adversarial by providing for the direct and cross examination of witnesses, representation of the parties by their attorneys, the appointment of counsel to represent indigent defendants, and application of the same rules of evidence as in criminal trials generally. Code Crim.Proc. arts. 16.01, 16.06, 16.-07. *Compare Gerstein v. Pugh,* 420 U.S. at 114 n. 14, 115 n. 15, 95 S.Ct. at 863 n. 14, 864 n. 15. It was once contemplated that examining trials be held soon after arrest in all cases by the same magistrate before whom the suspect was brought under article 15.17 of the Code in order "to examine into the truth of the accusation made," Code Crim.Proc. art. 16.01, and to decide whether the suspect should be committed to jail, discharged, or admitted to bail. Code Crim.Proc. art. 16.17. *Ex parte Garcia,* 547 S.W.2d 271 (Tex.Crim.App.1977); *Ex parte Wright,* 138 Tex. Crim.R. 350, 136 S.W.2d 212 (1940). Our decisional law has long since held, however, that an examining trial is only necessary if requested by the suspect, and then only if no indictment has yet been presented charging the same offense.

tained or made to give appearance bonds as a result of such decisions. But these people are not subjected to criminal prosecution under the laws of Texas until an indictment, information, or other charging instrument is filed. With the exception of criminal prosecutions in justice and municipal courts, a warrant of arrest based on a complaint showing probable cause to believe that a suspect committed the offense alleged, although sufficient to authorize his detention, is not the kind of instrument upon which a conviction may be obtained.[5]

Criminal prosecution begins in Texas when the State officially announces that it will seek to convict a suspect of violating the state's criminal laws. It does not begin when the State merely detains or requires security for the appearance of a suspect pending completion of its investigation and decision whether to prosecute. *See Dunn v. State*, 696 S.W.2d 561, 565 (Tex.Crim.App.1985) (plurality opinion) ("The mere arrest and subsequent questioning of a person do not constitute a sufficient formalization of proceedings to trigger the requirement of counsel under the Sixth Amendment.")[6] Accordingly, I would hold that formal prosecution is not initiated in Texas for purposes of the Sixth Amendment

right to counsel until the State has filed the kind of accusatory pleading upon which a conviction might lawfully be based.[7] In felonies, that pleading is an indictment, unless it has been waived. For misdemeanors punishable by imprisonment, it is a complaint and information. In justice and municipal courts, it may be a formal complaint alone. In my judgment, it is meaningless under Texas law to regard as formally adversarial any events which transpire before the filing of such an accusatory pleading. To the extent that they hold otherwise, I would overrule *Nehman, Lucas, Janecka,* and *Barnhill.*

I realize that many incidents in the investigative and administrative process prior to the inception of adversarial proceedings affect criminal suspects in important ways and that the assistance of counsel on such occasions might be genuinely helpful to them. But "our cases have never suggested that the purpose of the right to counsel is to provide a defendant with a preindictment private investigator[.]" *Gouveia,* 467 U.S. at 191, 104 S.Ct. at 2299. *See also Moran v. Burbine,* 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). Persons merely suspected of crimes simply are not covered by

*See Trussell v. State,* 414 S.W.2d 466, 467 (Tex. Crim.App.1967) and its progeny. Moreover, a finding of no probable cause does not foreclose subsequent grand jury indictment. *Compare Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). To the extent that these preliminary hearings are still held in some cases, the right to counsel is governed by pertinent statutes. But the examining trial is not itself a criminal prosecution, nor does it ever result in an official decision formally to charge the suspect with a criminal offense. *Compare Moore v. Illinois,* 434 U.S. at 228, 98 S.Ct. at 464.

5. It is well to remember in this context that the word "complaint" has come to mean at least two different things under Texas law. First, it describes a sworn affidavit upon the basis of which a magistrate may issue a warrant of arrest. Tex. Code Crim.Proc.Ann. arts. 15.03(a)2, 15.04, 15.-05. In this sense, it does not refer to a criminal pleading. *Woolridge v. State,* 653 S.W.2d 811, 814 n. 6 (Tex.Crim.App.1983). But the term is also used to describe the entire formal charging instrument in Class C misdemeanor prosecutions and, similarly, an essential part of the charging instrument in other misdemeanor cases. Tex. Code Crim.Proc. arts. 2.04, 2.05, 21.22, 45.01, 45.16, 45.17. In this second sense, of course, the filing of a complaint, contemporaneously with

the filing of an information if necessary, does mark the inception of formal adversary proceedings in Texas. *Holland v. State,* 623 S.W.2d 651 (Tex.Crim.App.1981); *Wells v. State,* 516 S.W.2d 663, 664 (Tex.Crim.App.1974); *Bass v. State,* 427 S.W.2d 624, 626 (Tex.Crim.App.1968) (opinion on original submission).

6. *Dunn* is denominated a plurality opinion because it was joined by only four judges. Its ultimate result was the reversal of a conviction on Fifth Amendment grounds. Yet the three judges who dissented without opinion did not make it clear that they disagreed with the Sixth Amendment analysis. Neither did the two judges who concurred in the result with written opinion. Consequently, it is impossible to tell how many judges actually agreed with the proposition for which *Dunn* is cited here. All that can be gleaned from the official record is that at least four, and possibly as many as nine, did.

7. Of course, nothing the Court says today will affect the implied right of suspects to counsel under the Fifth Amendment during confrontations with representatives of the State in which their privilege against self-incrimination may be jeopardized. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the Sixth Amendment. Rather, the right to counsel there assured applies only after the State has formally "committed itself to prosecute." *Kirby,* 406 U.S. at 689, 92 S.Ct. at 1882.

This does not mean, of course, that the Sixth Amendment is altogether inapplicable at every nonjudicial or nonadversarial encounter between the accused and agents of the government. *Powell v. Alabama,* 287 U.S. 45, 57, 53 S.Ct. 55, 60, 77 L.Ed. 158 (1932). Clearly, the right to counsel may be effective in circumstances which are neither judicial nor formally adversarial, such as lineups, police interrogations, and psychiatric examinations. *See Powell v. Texas,* 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989); *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). But the Sixth Amendment right to counsel applies in such instances, and at all other critical stages of the criminal prosecution, whether adversarial or investigative, only when the encounter occurs after adversarial proceedings are formally begun in a court of law.[8]

With these additional remarks, I join the opinion of the Court.

---

8. Our own Code of Criminal Procedure provides that, "a defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial proceeding." Tex.Crim.Code Proc.Ann. art. 1.051 (Vernon Supp.1991) (emphasis added). It therefore affords less protection on its face than does the Sixth Amendment, at least during postindictment stages of the process.